Melvin W. COLES, Appellant,

v.

General Howard W. PENNY, Director, Defense Mapping Agency, et al.

No. 74–1742.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 11, 1975.

Decided Feb. 23, 1976.

---

Lawrence J. Speiser, Washington, D. C., for appellant.

Michael I. Gewirtz, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Stuart M. Gerson, Derek I. Meier, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellees.

Before BAZELON, Chief Judge, and WRIGHT and McGOWAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge McGOWAN.

McGOWAN, Circuit Judge:

This case presents the question of whether notice to a federal employee that his charge of employment discrimination has been dismissed and that the agency decision is final suffices to start the running of the thirty-day period in which a civil action may be brought, when the notice fails to inform the employee of his right under Title VII to file such an action. We answer this question in the negative.

I

Appellant Melvin Coles, a black cartographer with the Defense Mapping Agency,[1] has on three occasions within the past fourteen years filed complaints alleging that the Agency failed to promote him due to racial discrimination. The second of these complaints was filed in 1970, processed through

---

1. Prior to July, 1972, appellant's employer was the Naval Oceanographic Office, the predecessor to the Hydrographic Center of the Defense Mapping Agency. They are referred to interchangeably as "the Agency."

regular administrative channels, and ultimately presented to the Board of Appeals and Review of the United States Civil Service Commission.[2] On May 19, 1972, the Board held that appellant's complaint was not supported by the evidence, App. at 39–40, and informed him that "[t]he Civil Service Regulations provide that a decision of the Board is final and that there is no further right of administrative appeal." App. at 40. No judicial review was sought.

Appellant's third discrimination complaint, filed on September 17, 1972,[3] contained an allegation of a pattern of racial discrimination at the Agency that was substantially identical to the one alleged in the 1970 complaint, as well as a new claim that the failure during the summer of 1972 to consider him for a promotion to a GS–14 position was discriminatory.[4] On July 18, 1973 the Board of Appeals and Review informed appellant that this complaint was also without merit and that "Civil Service Commission Regulations provide that the Board's decision is final and that there is no further right of administrative appeal. However, if you are not satisfied with this decision, you are authorized by section 717(c) of the Civil Rights Act, as amended, to file a civil action in an appropriate U. S. District Court within thirty (30) calendar days of your receipt of this decision." App. at 46.

The instant action was filed within that thirty-day period on August 17, 1973, by Mr. Coles *pro se* ; counsel later entered an appearance. Appellee moved for dismissal or in the alternative for summary judgment, and the latter was granted. With respect to the failure to consider appellant during the summer of 1972 for promotion to a GS–14 position, the District Court found that the Agency had no legal duty to do so. As for the general allegation of discrimination, the court found it to be untimely since it had originally been raised in the 1970 complaint and appellant had failed to file an action within thirty days after receiving notice of the Review Board's final action respecting the 1970 complaint. The trial court nonetheless proceeded to the merits, and reviewing the administrative record under an arbitrary and capricious standard, found nothing to warrant reversal. The instant appeal is from that grant of summary judgment.

## II

Until 1972, Title VII of the 1964 Civil Rights Act did not extend to federal employees. That lacuna was bridged by the Equal Employment Opportunity Act of 1972, which amended Title VII to grant federal employees the same rights and remedies as employees in the private sector. *Hackley v. Roudebush,* 171 U.S.App.D.C. 376, 520 F.2d 108, 126–35, 142–48 (1975). Subsection 717(a), 42 U.S.C. § 2000e–16(a) (Supp. II 1972), specifies that "[a]ll personnel actions affecting employees or applicants for employment . . . in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin"; subsection 717(b), 42 U.S.C. § 2000e–16(b) (Supp. II 1972), authorizes the Civil Service Commission to enforce subsection 717(a)

---

**2.** This complaint is hereinafter termed the "1970 complaint."

**3.** This complaint is hereinafter termed the "1972 complaint."

**4.** At the time that he applied for promotion to a GS–14 level, Coles had been a GS–13 cartographer for a period of five months. Under 5 C.F.R. § 300.602(a) (1975), an employee may be promoted to a position at GS–12 or above only after having served one year at the next lower grade, subject to the exception in *id.* § 300.-603(a)(4) that § 300.602 does not bar promotion when the Civil Service Commission, "on request of the head of the agency, authorizes the advancement to avoid undue hardship or inequity, in an individual case of meritorious nature." The Director of the Agency turned down Coles' application for promotion on the ground that he had served only five months in grade; the District Court upheld that ruling in finding that although the Director could request a waiver of the one year requirement, he had no obligation to do so.

Appellant concedes that § 300.603(a)(4) does not require that the Director exercise discretion to waive the requirement, but contends that the Director was obliged to *consider* whether to so exercise his discretion.

through provision of appropriate remedies and issuance of necessary rules and regulations. Subsection 717(c), 42 U.S.C. § 2000e–16(c) (Supp. II 1972), the pivotal section in determining whether any part of appellant's action was time-barred, provides that:

> Within thirty days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Civil Service Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Civil Service Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

The effective date of the 1972 Act was March 24, 1972, at which time appellant's 1970 complaint was still administratively pending.

■ In *Hackley*, decided after the District Court's disposition of this case, we held that the civil action provided for in subsection 717(c) is to be a *de novo* one rather than the type of administrative review conducted by the District Court in this case. As regards the claim first raised by appellant in his 1972 complaint that he was not considered for a GS–14 position, *Hackley* requires that we reverse and remand for *de novo* consideration by the District Court.[5]

If the claim of a general pattern of discrimination, contained in both the 1970 and 1972 complaints, was not time-barred, then a reversal and remand for *de novo* consideration of this claim is also appropriate; otherwise, affirmance as to this claim is plainly in order. This is the dispositive issue before us.

### III

Under Title VII of the Civil Rights Act as originally passed in 1964, claims of employment discrimination in the private sector were to be referred in the first instance to state commissions on employment discrimination (if in existence) and then to the Equal Employment Opportunity Commission (EEOC). Subsections 706(a–d), 42 U.S.C. §§ 2000e–5(a–d) (1970). If the EEOC failed to achieve voluntary compliance within a specified period, it was to "so notify the person aggrieved and a civil action may, within thirty days thereafter, be brought against the respondent named in the charge . . . by the person claiming to be aggrieved . . . ." Subsection 706(e), 42 U.S.C. § 2000e–5(e) (1970). On July 1, 1965—one year after the effective date of Title VII—the EEOC exercised its authority under subsection 713(a), 42 U.S.C. § 2000e–12(a) (1970), to issue procedural regulations to carry out the provisions of Title VII. 30 Fed.Reg. 8407 (1965). Of interest to us is the provision codified as 29 C.F.R. § 1601.25(a)(3) (1975), which requires that the notice to the aggrieved party re-

---

5. It may be that the District Court's resolution of this claim rested upon its view of a purely legal question—whether the Director of the Agency was obliged to consider whether to exercise discretion to promote as a hardship case an applicant who has not served one year in grade, *see* note 4 *supra*—as to which it accorded no deference to the agency's determination, and that therefore a remand would not lead to any change in the District Court's consideration of this question. Even if the remand results in no change in the standard applied in resolving this question—and it will be for the District Court to decide in the first instance whether that is the case—appellant may wish to avail himself of the opportunity to adduce additional evidence that he believes will illuminate this legal question. That possibility, and the necessity of remanding the other claim raised by appellant, warrant remanding this question as well.

quired by the Act must include "[a]dvice concerning his or her rights to proceed in court under Section 706(f)(1) of Title VII."

The extension of coverage to federal employees in 1972 expressly used the civil action for private employees as its model.[6] *See* subsection 717(c), 42 U.S.C. § 2000e–16(c) (Supp. II 1972), *quoted* at pp. ⸺ ⸺ of 174 U.S.App.D.C., pp. 611–612 of 531 F.2d *supra*; subsection 717(d), 42 U.S.C. § 2000e–16(d) (Supp. II 1972) ("The provisions of section 2000e–5(f) through (k) of this title, as applicable, shall govern civil actions brought hereunder."); *Hackley v. Roudebush, supra,* at 126–35, 142–48. A federal employee had to exhaust administrative remedies before bringing a civil action,[7] which under subsection 717(c) must be filed within thirty days of receipt of notice of final agency action. On October 21, 1972 —seven months after the effective date of the 1972 amendments—the Civil Service Commission (CSC), acting under its rule-making authority in subsection 717(b),[8] *see* p. ⸺ of 174 U.S.App.D.C., pp. 611–612 of 531 F.2d *supra,* promulgated regulations

expressly requiring that notice of final agency action advise the complainant of his right to bring a civil action and the time limits applicable thereto. 5 C.F.R. §§ 713.-221(d), .234, .282 (1975).

■ The Government's argument that appellant is time-barred as to his claim of a general pattern of discrimination in the Agency is quite simple. This claim was first raised in appellant's 1970 complaint, and was found to be without merit by the Board of Appeals and Review on May 19, 1972—nearly two months after the effective date of the 1972 amendments. Plaintiff failed to file a civil action within thirty days of the receipt of notice advising him that the agency action was final. Whether viewed as a jurisdictional provision,[9] a waiver of sovereign immunity,[10] or an express limitation on a right created by Congress,[11] the thirty-day limit must be strictly construed.[12] Once having failed to comply with that limitation, plaintiff may not circumvent it by filing another complaint containing virtually identical allegations, and

**6.** The Equal Employment Opportunity Act of 1972 also amended Title VII as it applies to the private sector in a number of ways not immediately relevant to the problem before us.

**7.** The exhaustion requirement is limited in one respect: after exhausting administrative remedies within the agency, unit, or department in which an individual is employed, he has the option of commencing a civil action at that point or of seeking review before the Civil Service Commission, retaining in the latter case the right to commence a civil action if he is aggrieved by the Commission's final action. *See Hackley v. Roudebush, supra,* at 126 n. 72, 155; pp. ⸺–⸺ of 174 U.S.App.D.C., pp. 611–612 of 531 F.2d *supra.*

**8.** The Civil Service Commission also relied upon other sources of authority, including 5 U.S.C. §§ 1301, 23301 [sic], 3302, 7151–54, 7301 (1970), and various executive orders. *See* 37 Fed.Reg. 22717 (1972).

**9.** *See, e. g., DeMatteis v. Eastman Kodak Co.,* 2 Cir., 511 F.2d 306, 309, *modified on rehearing,* 520 F.2d 409 (2d Cir. 1975); *Cleveland v. Douglas Aircraft Co.,* 509 F.2d 1027, 1029 (9th Cir. 1975) (per curiam); *Thornton v. East Texas Motor Freight,* 497 F.2d 416, 424 (6th Cir. 1974); *Torockio v. Chamberlin Mfg. Co.,* 456 F.2d 1084, 1085 (3d Cir. 1972) (en banc), *on*

remand, 56 F.R.D. 82 (W.D.Pa.1972), *aff'd without opinion,* 474 F.2d 1340 (3d Cir. 1973); *Harris v. National Tea Co.,* 454 F.2d 307, 309 (7th Cir. 1971).

**10.** *Brown v. GSA,* 507 F.2d 1300, 1307 (2d Cir. 1974), *cert. granted,* 421 U.S. 987, 95 S.Ct. 1989, 44 L.Ed.2d 476 (1975) (No. 74–768); *Carter v. Lynn,* 401 F.Supp. 1383, 103 Daily Wash. L.Rep. 1921, 1924 (D.D.C.1975).

**11.** *EEOC v. Louisville & N. R. R. Co.,* 505 F.2d 610, 613–14 (5th Cir. 1974), *cert. denied,* 423 U.S. 824, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975); *Archuleta v. Duffy's, Inc.,* 471 F.2d 33, 34–35 (10th Cir. 1973); *Goodman v. City Prods. Corp.,* 425 F.2d 702, 703–04 (6th Cir. 1970).

**12.** In ruling that the thirty-day limitation period should be strictly enforced, many courts have quoted the following language from *Kavanagh v. Noble,* 332 U.S. 535, 539, 68 S.Ct. 235, 237, 92 L.Ed. 150, 153 (1947):

Such periods are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary. [Citation omitted]. Remedies for resulting inequities are to be provided by Congress, not the courts.

perfecting a timely appeal from that complaint; otherwise, finality would never be attainable.

Although the Government's argument that the limitation period ordinarily requires strict observance is unexceptional,[13] nowhere does it address a critical question—was the notice sent by the Government on May 19, 1972 inadequate to begin the running of the thirty-day period because it failed to advise appellant of his right to bring a civil action? If such advice is *statutorily* required, appellant did not receive adequate notice until administrative review of his 1972 complaint had been completed and he was in July of 1973 advised of that fact *and of his right to sue within thirty days*. Since the instant action was filed within that period, it would be timely.

At the outset we note that this question arises in a limited number of cases which, like this one, fall in the interstices between the effective date of the statute and the date upon which the CSC regulations were issued. Cases involving matters transpiring before March 24, 1972—the effective date of the Act—are covered by section 717 only if they were pending administratively or judicially on that date.[14] But cases pending administratively on that date in which the final agency action took place after October 21, 1972 would be covered by the CSC regulations. Thus, only a small number of cases will present the question whether the statute requires by implication what the regulations expressly require—notice to the aggrieved party of his right to bring a civil action and the thirty-day limitation thereon.

We believe that the statute standing alone does require such notice. Subsection 717(c) was patterned after subsection 706(e), the analogous provision respecting private employees. The EEOC regulations implementing Title VII had long before 1972 spelled out that the statutory notice must advise the claimant of his right to sue within thirty days. Congress could hardly have been unaware of this EEOC regulation when it enacted subsection 717(c) to provide federal employees with the same right to bring a civil action that subsection 706(e) provided for private employees. The CSC's issuance of a similar regulation reflects the consistent administrative interpretation of the statutory notice requirement, an interpretation entitled to great deference. *See generally Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 210, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972); *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Skidmore v. Swift & Co.,* 323 U.S. 134, 139–40, 65 S.Ct. 161, 89 L.Ed. 124 (1944). Although we have found nothing in the legislative history precisely defining the term "notice," the history of legislative and administrative consideration leads us to the view that Congress meant in 1972 to incorporate in section 717 the interpretative gloss placed upon section 706 by the EEOC. *Cf.* 118 Cong.Rec. S 7166 (1972) (statement of Senators Javits and Williams) ("In any area where the new law does not address itself, or in any area where a specific contrary intention is not indicated, it was assumed that the present case law as developed by the courts would continue to govern the applicability and construction of Title VII.").

Such an understanding is consistent with the broad structure and purposes of Title VII. The scheme established by Congress relies upon laymen, operating without legal assistance, to initiate both administrative complaints and lawsuits, *see, e. g., Wetzel v. Liberty Mut. Ins. Co.,* 511 F.2d 199, 202–03 (3d Cir. 1975), *cert. granted,* 421 U.S. 987, 95 S.Ct. 1989, 44 L.Ed.2d 476 (1975); *Pace v.*

---

**13.** We need not, for purposes of this opinion, adopt any particular characterization of the limitation period or indicate whether we agree with a case such as *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924 (5th Cir. 1975), which both rejected the characterization of that period as "jurisdictional" and refused to require strict compliance therewith.

**14.** The established law in this Circuit limits the retroactive application of the 1972 amendments to Title VII to such cases. *See Hackley v. Roudebush, supra,* at 112 n. 4; *Grubbs v. Butz,* 514 F.2d 1323, 1327 & n. 9 (1975); *Womack v. Lynn,* 164 U.S.App.D.C. 198, 504 F.2d 267, 269 & nn. 4, 6 (1974).

*Super Value Stores, Inc.,* 55 F.R.D. 187, 190 (S.D.Iowa 1972), and "[procedural] technicalities are particularly inappropriate in [such] a statutory scheme," *Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679, 685 (1972). "Legislation which evinces such concern over the burden imposed upon a working man or woman seeking to enforce Title VII rights requires a practical and reasonable construction of its enforcement provisions." *Huston v. General Motors Corp.,* 477 F.2d 1003, 1008 (8th Cir. 1973).

Thirty days is not a long period in which to expect a *pro se* complainant to become aware of and exercise his statutory right to sue. Consider the situation in which the appellant found himself in this case. After two years of administrative consideration, his claim was denied by the Board of Appeals and Review. The notice he received—that "Civil Service Regulations provide that a decision of the Board is final and that there is no further right to administrative appeal"—had a definite ring of finality to it. A trained lawyer might realize that *judicial* review commences when *administrative* appeals end, but we do not believe that such a realization is likely to spring forth full blown in the mind of a layman; the notice actually received may rather have stifled any inclination appellant might have had to pursue the matter any further. It may be more than coincidental that appellant filed a timely action regarding his 1972 complaint, as to which he received notice of his right to sue, whereas his failure to bring an action regarding his 1970 complaint followed a less informative and possibly misleading notice.[15] In any event, we doubt that Congress intended to provide a judicial remedy—one we have recently held in *Hackley* to require *de novo* consideration—which is so easily forfeited by those whose rights it vindicates. A statutory construction likely in so many cases to render meaningless the provision of a judicial remedy is hardly the "practical and reasonable" one that we should seek.

This point finds support in the oft-repeated statement that Title VII is remedial in character and should be liberally construed to achieve its purposes. *E.g., Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924, 929 (5th Cir. 1975); *Henderson v. Eastern Freight Ways, Inc.,* 460 F.2d 258, 260 (4th Cir. 1972) (per curiam), *cert. denied,* 419 U.S. 912, 93 S.Ct. 976, 35 L.Ed.2d 275 (1973); *Culpepper v. Reynolds Metals Co.,* 421 F.2d 888, 891 (5th Cir. 1970). For this reason, "courts confronted with procedural ambiguities in the statutory framework have, with virtual unanimity, resolved them in favor of the complaining party." *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 461 (5th Cir. 1970); *accord, Harris v. Walgreen's Dist. Center,* 456 F.2d 588, 591 (6th Cir. 1972); *Beverly v. Lone Star Lead Const. Corp.,* 437 F.2d 1136, 1138 (5th Cir. 1971). That approach reflects not only the manifest importance of Title VII rights to complaining parties, but also the broad national commitment to eliminating such discrimination and the importance of private suits in fulfilling that commitment. *See, e. g., Jenkins v. United Gas Corp.,* 400 F.2d 28, 32 (5th Cir. 1968); *McQueen v. E. M. C. Plastic Co.,* 302 F.Supp. 881, 884 (E.D.Texas 1969). As the statutory language of the notice provision does not clearly compel any particular resolution of the issue before use, we should seek a reading of the statute "which effectuates rather than frustrates the major purpose of the legislative draftsmen." *Shultz v. Louisiana Trailer Sales, Inc.,* 428 F.2d 61, 65 (5th Cir. 1970), *cert.*

---

15. [T]he purpose of the statutory notification . . . . is "to provide a formal notification to the claimant that his administrative remedies with the Commission have been exhausted," . . . *and to inform him that the thirty-day period has begun to run* . . . .

*Franks v. Bowman Trans. Co.,* 495 F.2d 398, 404 (5th Cir. 1974) (emphasis supplied), *cert. denied,* 419 U.S. 1050, 95 S.Ct. 625, 42 L.Ed.2d

644 (1974), *cert. granted,* 420 U.S. 984, 95 S.Ct. 1417, 43 L.Ed.2d 667 (1975) (No. 74–728), *quoting Beverly v. Lone Star Lead Const. Co.,* 437 F.2d 1136, 1140 (5th Cir. 1971); *accord, Plunkett v. Roadway Express, Inc.,* 504 F.2d 417, 418 (10th Cir. 1974). The common use of the phrase "statutory notice of right to sue" may reflect a similar understanding of the purpose of the notice requirement.

*denied,* 400 U.S. 902, 91 S.Ct. 139, 27 L.Ed.2d 139 (1970). *See generally SEC v. C. M. Joiner Leasing Corp.,* 320 U.S. 344, 350–51, 64 S.Ct. 120, 88 L.Ed. 88 (1943); *Haggar Co. v. Helvering,* 308 U.S. 389, 394, 60 S.Ct. 337, 84 L.Ed. 340 (1940).

■ We have found no appellate consideration of whether the statute by itself requires notice of right to sue in a case, involving either federal or private employees, which, like this one, falls in the interstices between the statute's effective date and the issuance of implementing regulations.[16] Yet other cases determining whether an action is timely have exhibited a similar inclination, not to disregard the congressionally-mandated limitation, but to interpret it as the rest of the statute is interpreted, to further the broad remedial goals of Title VII. For example, many courts have found that a complainant either tolls the thirty-day period or succeeds in filing an action by requesting the district court to appoint counsel.[17] *E.g., Huston v. General Motors Corp., supra,* at 1008; *Harris v. Walgreen's Dist. Center, supra,* at 592; *Reyes v. M–K–T R. R. Co., supra,* at 296; *Beckum v. Tennessee Hotel,* 341 F.Supp. 991, 993 (W.D.Tenn.1971), and cases cited. We believe the term "notice," no less than the phrase "may file a civil action,"

requires an interpretation animated by the broad humanitarian and remedial purposes underlying the federal proscription of employment discrimination.[18]

One final argument supports our conclusion. In some cases arising after the EEOC promulgated a regulation requiring that the notice must advise the complaining party of his right to sue within thirty days, *see* pp. 6–7 *supra,* the EEOC had failed to include such advice. At least two courts have found that, in these circumstances, the thirty-day period did *not* begin to run when the defective notice was received. *Gates v. Georgia-Pacific Corp.,* 492 F.2d 292, 295 (9th Cir. 1974); *Garneau v. Raytheon,* 323 F.Supp. 391, 393 (D.Mass.1971).[19] If the notice of right to sue were required only by regulation, these rulings would indicate that, even though all statutory preconditions to commencement of the running of the time period have been met, an administrative agency may prescribe additional requirements whose nonfulfillment prevents the period from commencing. Such a view might seem to grant administrative agencies an impermissible authority to circumvent congressionally-specified limitation periods. *See DeMatteis v. Eastman Kodak,* 2 Cir., 511 F.2d 306, 311, *modified on rehearing,* 520 F.2d 409 (2d Cir. 1975). But

16. Our decision in *Hackley v. Roudebush, supra,* did involve such facts, but the issue of timeliness was not considered in either the briefs or the opinion.

One decision in the District Court is in accord with the result we reach. *Day v. Weinberger,* 8 EPD ¶ 9646 (D.D.C.1974), *vacated and remanded on other grounds sub nom. Day v. Mathews,* 174 U.S.App.D.C. ——, 530 F.2d 1083 (D.C.Cir., 1976).

17. *See* 42 U.S.C. § 2000e–5(f) (Supp. II 1972) (in civil action brought by private employee, "[u]pon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant"); *id.* § 2000e–16(d) (making § 2000e–5(f) applicable to suits by federal employees).

18. This belief reflects the spirit of and relies on reasoning analogous to that employed in Judge Gesell's recent decision in *Copeland v. Brennan,* 9 EPD ¶ 10,127 (D.D.C.1975). In that case the Civil Service Commission had sent the complainant proper notice of final agency ac-

tion and right to sue, but had not complied with 5 C.F.R. § 713.234 (1975) by failing to send similar notice to appellant's attorney. Relying on the administrative interpretation of the Act by the Commission and the broad policy considerations outlined above, Judge Gesell found that the statute standing alone implicitly required that notice be given to complainant's attorney, and that the lack thereof prevented the action from being time-barred.

19. We are aware of but unpersuaded by a contrary position taken by one court in the Eastern District of Missouri, a position that may have been implicitly overruled by a subsequent decision of the Eighth Circuit. *Compare Whitfield v. Certain-Teed Prods. Corp.,* 389 F.Supp. 274, 275–76 (E.D.Mo.1974), *citing Harris v. Sherwood Medical Indus., Inc.,* 386 F.Supp. 1149 (E.D.Mo.1974) *and Tuft v. McDonnell Douglas Corp.,* 385 F.Supp. 184 (E.D.Mo.1974), *with Tuft v. McDonnell Douglas Corp.,* 517 F.2d 1301 (8th Cir.), *cert. denied,* 423 U.S. 1052, 96 S.Ct. 782, 46 L.Ed.2d 641, 44 U.S.L.W. 3394 (1976), *rev'g* 385 F.Supp. 184 (E.D.Mo.1974).

any anomaly is easily avoided if the statute is read by itself to require notice of right to sue, a requirement made more explicit by the administrative agency charged with carrying out the statutory mandate.

We hold, then, that the thirty-day period within which a civil action may be filed did not begin to run until July 18, 1973—the first time at which appellant was notified that he had a right to bring a civil action within thirty days. Since this action was brought within thirty days of that notice, it is not barred and, under *Hackley,* all claims raised must be remanded to the District Court for *de novo* consideration.

We reverse and remand for further proceedings consistent with this opinion.