**Darnell HILLIARD, Appellant,**

v.

**Paul A. VOLCKER, Chairman of the Federal Reserve Board.**

No. 77–1700.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 22, 1979.

Decided Feb. 3, 1981.

Roy J. Baldwin, for appellant.

Richard W. Hausler, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., at the time the brief was filed, John A. Terry, David H. Shapiro and Michael W. Farrell, Asst. U. S. Attys. and James V. Mattingly, Jr., Washington, D. C., Atty., Board of Governors of the Federal Reserve System, were on the brief, for appellee.

Before WRIGHT, and ROBINSON, Circuit Judges, and RICHEY *, District Judge.

Opinion for the Court filed by Circuit Judge Spottswood W. Robinson, III.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

This appeal presents a novel question: In a dispute between a *pro se* complainant and a federal agency directly implicating Title VII of the Civil Rights Act of 1964,[1] as augmented by the Equal Employment Opportunity Act of 1972,[2] who, if anyone, has the responsibility of informing the complainant of his statutory right to apply for an appointment of counsel to represent him in ensuing litigation in a federal district court? In the case before us, appellant, unaware of that right, was without a lawyer in the District Court, and he there suffered a dismissal of his discrimination action against the Federal Reserve Board. Our call is now to decide whether on that account appellant should be afforded another opportunity to sustain his claim, this time after seeking the assistance of counsel.

We hold that the involved federal agency is under a duty suitably to advise a lawyer-less complainant that the court may, in its discretion, provide counsel on request. Since the Board did not do so here, and appellant did not otherwise learn of his right to ask for counsel and was prejudiced by lack of legal representation, we vacate the dismissal order and remand the case for further proceedings.

## I

Resolution of this appeal necessitates recitation of relatively few of the events preceding the advent of suit. Appellant submitted several employment applications to the Federal Reserve Board over a three-year period,[3] and viewed the Board's invariably unfavorable responses as racial discrimination violative of Title VII.[4] Subsequently, appellant pursued to a conclusion the administrative remedies afforded by the Board, but obtained no satisfaction whatsoever.[5]

Along the way, in a letter to appellant incorporating the decision of its equal employment opportunity examiner, the Board had stated:

[Y]ou have the right to have your complaint reviewed by the Board of Governors, and you have 15 days from the receipt of this letter to request such a review. In addition, in accordance with section 14 of the Board's regulations, you have the right to file a civil action in an appropriate United States District Court within 30 days from receipt of final action taken by the Board on your complaint.[6]

But nowhere in this letter, or otherwise in any manner, did the Board ever mention the court's authority to appoint counsel for lay complainants in Title VII lawsuits.[7]

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

1. Pub.L.No. 88–352, tit. VII, § 701 *et seq.*, 78 Stat. 253 (1964), as amended, 42 U.S.C. § 2000e *et seq.* (1976) [hereinafter cited as codified].

2. Pub.L.No. 92–261, § 2 *et seq.*, 86 Stat. 103 (1972), codified, as amended, variously at 42 U.S.C. § 2000e *et seq.* (1976) [hereinafter cited as codified].

3. Administrative Record (Ad.R.) 235–236.

4. Ad.R. 235. Title VII specifies broadly that "[a]ll personnel actions affecting employees or applicants for employment ... in executive agencies ... shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–16(a)

(1976). In the District Court, Board counsel suggested that the Board might not be an agency within the meaning of Title VII, but to the court it was "quite clear" that it was. Transcript of March 11, 1977 (Tr. I) 10–11. See *Dorsey v. Federal Reserve Bank*, 451 F.Supp. 683, 684 (E.D.Mo.1978) (Title VII applies to a federal reserve bank). The Board does not renew that contention on appeal.

5. Ad.R. 239.

6. Ad.R. 239. We are prompted to observe that the right to sue proceeds from the Act, and not from an agency regulation. 42 U.S.C. § 2000e–16(c) (1976).

7. See *id.* § 2000e–5(f)(1) (1976), quoted in text *infra* at note 22, which provides for discretionary appointment of counsel, and which by 42

After receiving notice of the final agency action, appellant, unaided by a lawyer, timely filed a handwritten complaint in the District Court.[8] That was dismissed as "incomprehensible,"[9] but appellant was permitted to file an amended complaint,[10] after which the court found it necessary to hold two status conferences in an effort to clarify it. Appellant was not represented by an attorney at either conference or at any other stage of the District Court proceedings.

The transcripts of the status conferences portray the handicap that a layman often faces when he lacks counsel in court. Indeed, they suggest that, despite commendable efforts by the court and the Board's lawyer to explain matters to appellant, at times he really did not understand what was transpiring.[11] But one conspicuous example need be cited for present purposes. The court decided to limit the trial to a de novo evaluation of the evidence in the administrative record, as supplemented by exhibits from the parties, and, if appellant wished, by his own live testimony.[12] As events turned out, however, appellant did not offer additional testimony.[13] He now insists on appeal that the reason simply was that he did not comprehend the course of procedure the court prescribed.[14]

Ultimately, the District Court held that appellant had failed to sustain his averment of discrimination by a preponderance of the evidence.[15] Accordingly, it dismissed the action,[16] whereupon appellant came here. He has been represented by counsel throughout this appeal.

## II

Appellant contends that the District Court erred in failing to appoint, *sua sponte*, a lawyer to represent his cause.[17]

---

U.S.C. § 2000e–16(d) (1976) is made operative in Title VII suits against federal employers.

**8.** Record on Appeal (R.), Document (Doc.) 1.

**9.** *Hilliard v. Burns*, Civ.No. 76–1655 (D.D.C.) (order), R., Doc. 1. The complaint consisted of eight pages of legal-size paper, but almost all of the handwriting is illegible. Appellant had scrawled "I want a jury trial," or words to that effect, across the bottom of several of the pages.

**10.** R., Doc. 2.

**11.** See note 20 *infra*.

**12.** Tr. I 15–16; Transcript of Apr. 25, 1977 (Tr. II) 22–23.

**13.** Appellant informs us that he planned to testify, and that he left the second status conference fully expecting that he would have a chance to do so. Brief for Appellant at 8–9, 13. The Board states that after that conference the understanding of the parties was that appellant would contact the court if he wished to offer his testimony. Brief for Appellee at 22. However that may be, the record lends support to appellant's claim that he did not knowingly abandon his plan to take the witness stand, and in no way does the record tend to refute that claim. Not only did he make clear at the first status conference that he wanted to testify, see Tr. I 12, but he repeatedly interjected in the proceedings what amounted to bits of testimony on the merits. See, *e. g.*, Tr. I 12, 14; Tr. II 19–20. And his final record comment on the subject was that he perceived "no need to testi-

fy *right now at this point*." TR. II 22 (emphasis supplied). This expression, combined with his announced expectation that another hearing would be forthcoming, see note 14 *infra*, suggests that he never wavered in his desire to testify at some point.

**14.** At the second and last status conference, the court told appellant that if he had nothing further to present, "we will decide the case on the basis of the papers in the record," and appellant outwardly agreed. Tr. II 22–23. Moments later, the attorney for the Board announced, "[w]e will file dispositive motions," and appellant, who apparently did not understand, see note 20 *infra*, made no reply. Tr. II 25. Shortly thereafter, appellant stated to the judge, "[a]ny further Court date, I will be hearing from you," Tr. II 25, seemingly not realizing that there would be no further "court date"— save possibly for hearing of the Board's motions—unless he requested it for purposes of his own testimony, which earlier he had made known his desire to give. Tr. I 12.

**15.** *Hilliard v. Burns*, Civ.No. 76–1655 (D.D.C. June 28, 1977) (memorandum).

**16.** *Id.* (order).

**17.** Appellant further asserts that the District Court tolerated what he characterizes essentially as an unknowing waiver of the right to a trial de novo which Title VII guarantees. See, *e. g., Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976); *Hackley v. Roudebush*, 171 U.S.App.D.C. 376, 520 F.2d

By our analysis, this argument is wide of the mark. Title VII imposes a duty on the court to consider an appointment of counsel for a complainant but only upon his application,[18] and there was no such request in this case. Appellant protests, however, that he could not reasonably be expected to ask for a court-appointed attorney when, throughout his tenure in the District Court, he "remained absolutely ignorant" of the court's discretion to furnish one in a Title VII case.[19] In light of appellant's factual premise—which the record gives no cause to doubt—we must determine who, if anyone, bears the responsibility of acquainting lawyerless Title VII complainants with the court's authority in this regard.[20] We conclude that there is this duty, and that it lies with the agency disposing of the discrimination claim administratively.

Faced as we are with a task basically one of statutory construction, we start with the pertinent statutory language:[21]

> Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for [the] complainant and may authorize the commencement of the action without the payment of fees, costs, or security.[22]

We begin, too, mindful that this provision, like any other statute, must be read in a manner that " 'effectuates rather than frustrates the major purpose of the legislative draftsmen,' "[23] and we find its objective abundantly clear. Congress realized that many litigants pressing Title VII grievances would have but limited financial resources[24] and scant knowledge of the intri-

---

108 (1975). The essence of his argument on this score is that the court's exclusive reliance on the administrative record for the testimonial versions of the witnesses robbed the trial of the de novo quality contemplated by those cases. We find no need to address this contention, for, we later hold, the District Court must reopen the record for appellant's testimony and reconsideration of his discrimination claim in light thereof. See note 77 *infra* and accompanying text.

**18.** See text *infra* at note 22.

**19.** Brief for Appellant at 2 ("the complainant remained absolutely ignorant of the fact that he might have a right to an attorney, and that he certainly needed an attorney to avoid botching his case").

**20.** We have reached this question only after we became satisfied that appellant was hurt by lack of counsel in the presentation of his case in the District Court. The record as a whole portrays a litigant materially hampered because he had no attorney. The main source of prejudice was that, despite an apparently steadfast desire to do so, see note 13 *supra*, appellant missed his opportunity to deliver his own testimony in open court—an opportunity to which he was entitled, see *Hackley v. Roudebush, supra* note 17, 171 U.S.App.D.C. at 418, 520 F.2d at 150, and one that counsel almost certainly would have protected. See text *supra* at note 12.

At the second status conference, the court invited counsel for the Board to file a motion for summary judgment, and told appellant that he could respond to the motion if he so desired. Tr. II 21. If, as appellant maintains, he thought at that time that he would have a chance to testify, he could not have understood the nature or potential consequences of the summary-judgment procedure, and no one attempted to explain them to him. When the Board filed the motion, appellant made no reply to it, and the court granted it without a hearing. R. 11–12. Had appellant been represented by counsel, he hardly would have left a summary-judgment motion unanswered.

**21.** See, *e. g., Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766, 772 (1980).

**22.** 42 U.S.C. § 2000e–5(f)(1) (1976).

**23.** *Coles v. Penny*, 174 U.S.App.D.C. 277, 283, 531 F.2d 609, 615 (1976), quoting *Shultz v. Louisiana Trailer Sales, Inc.*, 428 F.2d 61, 65 (5th Cir.), *cert. denied*, 400 U.S. 902, 91 S.Ct. 139, 27 L.Ed.2d 139 (1970).

**24.** The provision authorizing appointment of counsel has been a part of Title VII from the time of its enactment. In 1972, Congress amended 42 U.S.C. § 2000e–5 extensively, but retained the appointment provision in its original language. The House Report submitted at that time explained:

> By including this provision in the bill, the committee emphasizes that the nature of Title VII actions more often than not pits parties of unequal strength and resources against each other. The complainant, who is usually a member of a disadvantaged class, is opposed by an employer who not infrequently is one of the nation's major producers, and who has at his disposal a vast array of resources and legal talent.

cacies of legal procedure.[25] In granting complainants the right to request counsel,[26] and the courts discretionary authority to appoint counsel, Congress intended to mitigate this evident disadvantage.[27] Nonetheless, as all too well exemplified by this appeal, both the right and the power remain among those procedural niceties with which a layman may not be familiar, and complainants unaware of their rights obviously are incapable of asserting them. We would mock Title VII's scheme of lay-initiated lawsuits[28] if we failed to realize that Congress must have contemplated a step, at some point in the process, assuring that complainants know that the court is licensed to consider, and in appropriate situations to grant, requests for an assignment of counsel.

The legislative history of the Equal Employment Opportunity Act of 1972 lends substantial support to the view that Congress intended some suitable notification to unrepresented complainants. The 1972 statute, which extended Title VII coverage to the bulk of the federal workforce,[29] also enlarged the role of the Equal Employment Opportunity Commission in the enforcement of Title VII in the private sector.[30] The regulatory machinery was extensively overhauled, the rights of affected applicants and employees were strengthened and broadened,[31] and the importance of a reasonably informed claimant was reemphasized.[32] As the Senate Report on the amending bill explained:

Provisions of present law requiring that the person aggrieved be notified of his rights have been retained. Especially in light of the further safeguards in this bill, the Commission is expected, at the commencement and at other appropriate stages of the proceedings, to fully notify the aggrieved person in clear and understandable fashion of the various procedural rights and steps open to him. Too often a person files a charge but then blunders along lost in the bureaucratic process. The Committee believes that further steps should be taken, including perhaps follow-up notification, to ensure that an aggrieved person knows at apro-

H.R.Rep.No. 92–238, 92d Cong., 1st Sess. 12 (1971) U.S.Code Cong. & Admin. News 1972, 2137, 2148.

25. When, in 1972, Congress extended the period for filing agency-level employment-discrimination complaints from 90 to 180 days after the alleged discrimination, it noted that "aggrieved individuals ... frequently are untrained laymen who are not always aware of the discrimination which is practiced against them ...." Section-by-Section Analysis of S. 2515, The Equal Employment Opportunity Act of 1972, 118 Cong.Rec. 4940, 4941 (1972). We ourselves have recognized that "[t]he scheme established by Congress relies upon laymen, operating without legal assistance, to initiate both administrative complaints and lawsuits." *Coles v. Penny, supra* note 23, 174 U.S.App. D.C. at 283, 531 F.2d at 615; see also *Bell v. Brown*, 181 U.S.App.D.C. 226, 230–231, 557 F.2d 849, 853–854 (1977). And the Supreme Court similarly has pointed out that strict enforcement of procedural technicalities is "particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." *Love v. Pullman Co.*, 404 U.S. 522, 526–527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679, 684–685 (1972).

26. While appointments of counsel are discretionary, the complainant's explicit and unqualified statutory privilege of requesting counsel once in court is no less his right than his statutory option to come there in the first place. The one prerogative is as indefeasible, and in particular situations just as important, as the other.

27. See note 22 *supra.*

28. See note 22 *supra.*

29. See 42 U.S.C. § 2000e–16 (1976).

30. See S.Rep.No. 92–681, 92d Cong., 2d Sess. 16–21 (1972) (conference report); H.R.Rep.No. 92–899, 92d Cong., 2d Sess. 16–21 (1972) (same).

31. See generally H.R.Rep.No. 92–238, *supra* note 24; S.Rep.No. 92–415, 92d Cong., 1st Sess. (1971).

32. The most visible indicium of this congressional concern has always been the express requirement of notice to the affected employee of the final administrative action—the so-called "right-to-sue" notice. 42 U.S.C. §§ 2000e–5(f)(1), 2000e–16(c) (1976).

priate [*sic*] times the status of the case and his rights under the law.[33]

From the very beginning, Congress has authorized Title VII complainants to bring civil actions on their discrimination claims if they remain unsatisfied after administrative proceedings have run their course.[34] An invariable statutory concomitant of this license to sue has been the requirement that complainants be given notice of the administrative disposition of their complaints[35] —a notice prerequisite to suit.[36] The Equal Employment Opportunity Commission, whose regulatory realm has always included private-sector employees,[37] has promulgated regulations incorporating "the procedures . . . for carrying out its responsibilities in the administration and enforcement of Title VII."[38] One such regulation specifies that the so-called "right to sue" notice shall include "advice concerning the institution of [a] civil action by the person claiming to be aggrieved, where appropriate."[39] And at least since 1973, the standard right-to-sue notice utilized by the Commission has told discrimination claimants, as a part of that advice, that

[i]f you do not have a lawyer, or are unable to obtain the services of a lawyer, take this notice to the United States District Court which may, in its discretion, appoint a lawyer to represent you.[40]

These administrative prescriptions bear weighty decisional significance under well settled principles, to which we may once again resort for guidance:

An administrative interpretation of a statute by an agency entrusted with its enforcement commands great deference in the courts.[41] "Particularly is this respect due when the administrative practice at stake 'involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new.' "[42] Where the agency is authorized to issue regulations to which Congress has imparted the force of law, . . . its interpretation is entitled to an even larger measure of esteem.[43] And "[t]o sustain the [agency's] application of [the] statutory term, we need not find that its construction is the only reasonable one, or even

---

**33.** S.Rep.No. 92–415, *supra* note 31, at 27.

**34.** Private-sector complainants were granted that right by Title VII as originally enacted. See 42 U.S.C. § 2000e–5(f)(1) (1976). Federal employees gained the right through the 1972 amendments. See 42 U.S.C. § 2000e–16(c) (1976).

**35.** 42 U.S.C. §§ 2000e–5(f)(1), 2000e–16(c) (1976).

**36.** 42 U.S.C. §§ 2000e–5(f)(1), 2000e–16(c) (1976).

**37.** See 42 U.S.C. §§ 2000e–4, 2000e–5 (1976). The United States Civil Service Commission originally had primary enforcement responsibility, with power to issue appropriate regulations, for Title VII in its application to the federal sector. See 42 U.S.C. § 2000e–16 (1976). Pursuant to the Reorganization Act of 1977, Pub.L.No. 95–17, 5 U.S.C. §§ 901–912 (Supp. III 1979), those functions were transferred to the Equal Employment Opportunity Commission, effective October 1, 1979. Reorganization Plan No. 1 of 1978, § 3(a), 43 Fed. Reg. 19807–19808 (1978), 92 U.S. Code Cong. & Admin. News, p. 9795 (1978). See Exec. Order No. 12106, 44 Fed.Reg. 1053 (1978).

**38.** 29 C.F.R. § 1601.1 (1979).

**39.** 29 C.F.R. § 1601.28(e)(2) (1979).

**40.** Equal Employment Opportunity Commission, Compliance Manual (CCH) (1975), ¶ 1068, Ex. 40–A (reproducing Apr. 1973 right-to-sue notice).

**41.** Citing *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–434, 91 S.Ct. 849, 854–855, 28 L.Ed.2d 158, 165 (1971); *United States v. City of Chicago*, 400 U.S. 8, 10, 91 S.Ct. 18, 20, 27 L.Ed.2d 9, 12–13 (1970); *Udall v. Tallman*, 380 U.S. 1, 4, 85 S.Ct. 792, 795, 13 L.Ed.2d 616, 619 (1965).

**42.** Quoting *Power Reactor Dev. Co. v. Electrical Workers Int'l Union*, 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924, 932 (1961), in turn quoting *Norwegian Nitrogen Prods. Co. v. United States*, 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796, 807 (1933), in turn quoted in *Udall v. Tallman, supra* note 41, 380 U.S. at 16, 85 S.Ct. at 801, 13 L.Ed.2d at 625.

**43.** Citing *General Elec. Co. v. Gilbert*, 429 U.S. 125, 140–143, 97 S.Ct. 401, 410–411, 50 L.Ed.2d 343, 357–358 (1976).

that it is the result we would have reached had the question arisen in the first instance in judicial proceedings."[44]

True it is that the Equal Employment Opportunity Commission's practice of informing complainants on the potential for appointed counsel does not achieve a perfect score under these standards, for it did not originate contemporaneously with the enactment of Title VII in 1965.[45] We think, however, that it scores well enough to warrant serious consideration in the interpretation we are summoned to make.[46] It was, after all, a step taken ostensibly as a matter of statutory duty by an agency entrusted with enforcement of Title VII from its inception.[47] It implements an express exercise of the agency's rulemaking power favoring "advice concerning the institution of [a] civil action,"[48]—one following closely on the heels of congressional emphasis on procedural protections for lay employees endeavoring to work their way through the statutory process.[49] The practice is thoroughly consistent with Title VII's legislative history,[50] and is not in the least a deviation from any prior position authoritatively voiced by the Commission.[51]

Weighing, then, the statutory text,[52] the legislative and administrative histories,[53] the remedial goals[54] and the sheer common-sense in the matter,[55] we are constrained to hold that Title VII imposes the requirement that complainants be informed that in the event of suit the court is authorized to appoint counsel in appropriate situations upon request. This responsibility is but one facet of the broader congressional expectation that Title VII claimants would be advised generally on their rights.[56] That is a function effectively dischargeable only at the administrative level.[57] Indeed, there hardly could be a more propitious occasion to speak to counsel-appointment than when the complainant is notified that he is free to

44. *American Horse Protection Ass'n v. United States Dep't of Interior*, 179 U.S.App.D.C. 246, 551 F.2d 432 (1977), last quoting *Unemployment Compensation Comm'n v. Aragon*, 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136, 145 (1946), in turn quoted in *Udall v. Tallman*, *supra* note 41, 380 U.S. at 16, 85 S.Ct. at 801, 13 L.Ed.2d at 625.

45. See *General Elec. Co. v. Gilbert*, *supra* note 43, 429 U.S. at 141–142, 97 S.Ct. at 410, 50 L.Ed.2d at 357–358.

46. Even if the practice had more shortcomings than the one identified in text, it would still retain considerable value in any effort at statutory construction. *Cf. Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124, 129 (1944) ("[t]he weight of [an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control"). Accord, *Batterton v. Francis*, 432 U.S. 416, 425 n.9, 97 S.Ct. 2399, 2405–2506 n.9, 53 L.Ed.2d 448, 456 n.9 (1977).

47. See note 37 *supra* and accompanying text.

48. "The Commission shall have authority from time to time to issue, amend, or rescind suitable procedural regulations to carry out the provisions of [Title VII]." 42 U.S.C. § 2000e–12(a) (1976). Surely the underlying regulation, see text *supra* at note 39, is procedural in character. Compare *Coles v. Penny*, *supra* note 23, 174 U.S.App.D.C. at 281, 531 F.2d at 613; *Bell v. Brown*, *supra* note 25, 181 U.S. App.D.C. at 231–232, 557 F.2d at 854–855. *Cf. General Elec. Co. v. Gilbert*, *supra* note 43, 429 U.S. at 141 n.20, 97 S.Ct. at 410 n.20, 50 L.Ed.2d at 357 n.20 (distinction between procedural and substantive regulations).

49. See note 33 *supra* and accompanying text.

50. See text *supra* at notes 24–27, 29–36.

51. Compare *General Elec. Co. v. Gilbert*, *supra* note 43, 429 U.S. at 142–145, 97 S.Ct. at 411–413, 50 L.Ed.2d at 358–360.

52. See text *supra* at note 22.

53. See text *supra* at notes 24–27, 29–40.

54. See notes 24, 25 *supra* and accompanying text.

55. See text following note 27 *supra*.

56. See text *supra* at note 33.

57. Suitable advice by the court at the onset of litigation would, of course, suffice for those who actually sue. But, presumably at least, numerous Title VII claimants never venture across the threshold of the courthouse simply because they do not know that, once in, they could ask for counsel.

sue.[58] The Equal Employment Opportunity Commission is doing just that in all cases that are brought before it,[59]—predominantly, those in the private sector.[60] If the will of Congress is to be fully effectuated, implicated agencies must do the same for those who charge forbidden discrimination in federal employment.[61]

It follows that when a complainant is prejudiced because the agency left him ignorant of his right to seek court-appointed counsel, his claim for rectification is meritorious. This conclusion accords with our earlier interpretations of the legislative history and policies underlying Title VII. Two of our fairly recent decisions, *Coles v. Penny*[62] and *Bell v. Brown*,[63] underscore our solid adherence to the principle that lay complainants cannot be penalized for failing to assert procedural rights which the involved agency has neglected to adequately explain. In *Coles*, a federal employee did not file suit within 30 days of receipt of notice of unfavorable agency action, the period statutorily specified therefore.[64] The notice had not informed him either of his right to sue or of the short period within which he could do so. In holding, as a matter of statutory interpretation, that he could not be bound to the 30 day limitation,[65] we pointed out that "[t]hirty days is not a long period in which to expect a *pro se* complainant to become aware of and exercise his statutory right to sue."[66] We also reiterated the oftstated judicial admonition that "Title VII is remedial in character and should be liberally construed to achieve its purposes,"[67] and we added:

> [W]e doubt that Congress intended to provide a judicial remedy . . . which is so easily forfeited by those whose rights it vindicates. A statutory construction likely in so many cases to render meaningless the provision of a judicial remedy is hardly the "practical and reasonable" one that we should seek.[68]

*Bell v. Brown*, decided just over a year later, presented another situation in which an aggrieved federal employee filed his civil action late, this time because no right-to-sue notice was sent directly to him. We held that mailing of the notice only to his legal representative did not trigger the 30-day filing period because the employee had not "received" notification within the meaning of the statutory language.[69] We reminded that " 'where congressional purpose is unclear, courts have traditionally resolved ambiguities in remedial statutes in favor of those whom the legislation was designed to protect.' "[70] We noted that our reading of the statutory word "receipt" not only harmonized with "the fundamental objectives" of Title VII but also "comport[ed] . . . with the everyday realities of Title VII litigation."[71] We concluded that any other interpretation could "render meaningless" the judicial remedy that the statute provides.[72]

The instant case presents a similar dilemma. Here, too, we are confronted by statu-

---

58. As we have noted, that is the point at which the Equal Employment Opportunity Commission informs its claimants of the opportunity to request counsel. See text *supra* at notes 37–40.

59. See text *supra* at note 37.

60. See note 37 *supra* and accompanying text.

61. See note 57 *supra*.

62. *Supra* note 23.

63. *Supra* note 25.

64. 42 U.S.C. § 2000e–16(c) (1976).

65. *Coles v. Penny, supra* note 23, 174 U.S.App. D.C. at 285, 531 F.2d at 617.

66. *Id.* at 283, 531 F.2d at 615.

67. *Id.*

68. *Id.*, quoting *Huston v. General Motors Corp.*, 477 F.2d 1003, 1008 (8th Cir. 1973).

69. *Bell v. Brown, supra* note 25, 181 U.S.App. D.C. at 229–233, 557 F.2d at 852–856.

70. *Id.* at 230, 557 F.2d at 853, quoting *Coles v. Penny, supra* note 23, 174 U.S.App.D.C. at 283, 531 F.2d at 615, in turn quoting *Sanchez v. Standard Brands*, 431 F.2d 455, 461 (5th Cir. 1970).

71. 181 U.S.App.D.C. at 230, 557 F.2d at 853.

72. *Id.* at 231, 557 F.2d at 854.

tory silence on the central question, yet we must avoid a construction that robs the statutory right to sue of its value. Appellant, like the plaintiff in *Coles*, was unaware of an important procedural right because the agency responsible for informing him of it did not do so. No more here than in *Coles* should he have to pay the price of dismissal for his lack of legal sophistication.

As in *Bell*, we must resolve any statutory ambiguity in favor of appellant.[73] In the context of a highly remedial statute, we cannot assume that congressional imprecision indicates congressional indifference. Nor should we lose sight of the "everyday realities of Title VII litigation,"[74] one of which—as this case attests—is that many lay claimants will remain unaware of the district courts' authority to appoint counsel for them unless they are so informed by the agency involved. Rather, we can rest secure in the knowledge that Congress certainly did not intend to discourage civil actions by such complainants, or to handicap them in the conduct thereof.

We hold, then, that Title VII requires federal agencies conducting proceedings thereunder to inform administratively unsuccessful complainants that in the event of suit the court has discretionary power to appoint counsel for them. We further hold that a litigant who, for unawareness of the court's power, fails to request counsel should not be penalized because the agency has been remiss in this duty. Appellant's

discrimination claim thus must be returned to the District Court.[75] In the exercise of an informed discretion, the court must first determine whether an appointment of counsel for appellant should be made,[76] and if so to proceed accordingly. In any event, the record must be reopened for receipt of appellant's testimony live,[77] and for such further proceedings as may be in order. Should new evidence be introduced, the court must then reconsider *de novo* the proofs as a whole. To these ends, the judgment appealed from is vacated and the case is remanded to the District Court.

*So ordered.*

---

**73.** See text *supra* at note 70.

**74.** See text *supra* at note 71.

**75.** While we today hold that the duty to inform is the agency's, it would be pointless to remand to the Federal Reserve Board for that purpose. Appellant now knows that he could have requested counsel, and seeks a fresh start in the District Court by doing so. Of course, the fact that the agency has the responsibility of informing unrepresented individuals of the right to request counsel does not mean that the trial courts need never lend a hand. Obviously, the court could easily and very usefully ask of the lay plaintiff whether court-appointed counsel is desired. We do not say that the Act requires the court to do so. We only remind that appeals such as this one could be avoided were the court to inquire on its own.

**76.** Aside from the statement that counsel should be appointed "in such circumstances as the court may deem just," 42 U.S.C. § 2000e–5(f)(1) (1976), Title VII does not prescribe the criteria by which courts should evaluate requests for counsel. We have never done so either, and we will not undertake to do so here. Instead, we leave the matter to the informed discretion of the District Court in the first instance. But see *Caston v. Sears, Roebuck & Co.*, 556 F.2d 1305, 1309 (5th Cir. 1977) (setting forth factors Fifth Circuit deems relevant).

**77.** As the record now stands, it was his wish as well as his right to testify, and both were lost by failure of understanding and communication. See text *supra* at notes 11–13 and notes 13, 14, 20 *supra*.