**Jeannette M. GATES, Appellee,**

**v.**

**GEORGIA–PACIFIC CORPORATION, a corporation, Appellant.**

**Nos. 26868 and 72–2348.**

United States Court of Appeals, Ninth Circuit.

Feb. 22, 1974.

Paul Haerle (argued), Stephen D. Bulter, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., John B. Crowell, Jr., Georgia-Pacific Corp., Portland, Or., for appellant.

Keith Burns (argued), Portland, Or., George H. Darden, EEOC (amicus curiae), Washington, D. C., for appellee.

Before DUNIWAY and SNEED, Circuit Judges, and SHARP,* District Judge.

## OPINION

SNEED, Circuit Judge:

This is an action brought under Title VII of the 1964 Civil Rights Act, 42 U. S.C. 2000e–5, alleging discriminatory hiring practices.

Appellee Jeannette Gates, a Black woman, has a strong background in accounting. She holds a bachelor's degree in business administration and a Master of Business Administration degree from New York University. Mrs. Gates took 23 hours of accounting in her undergraduate program, and she became qualified to teach accounting as a result of her graduate work. In addition to working as an accountant for a federal agency and the City of Portland, Mrs. Gates has taught accounting at the college level. In sum, Mrs. Gates possesses strong academic and practical experience in her profession of accounting.

As a result of a transfer of its administrative offices to Portland, appellant Georgia-Pacific Corporation had four cost accountant vacancies. In order to fill the vacancies which could not be met by intracompany transfers, Georgia-Pacific placed newspaper advertisements in daily newspapers. One of these advertisements appeared in the *Portland Oregonian* for January 22, 1967. Responding to this advertisement, Mrs. Gates contacted Georgia-Pacific's Portland of-

fice and was interviewed for the position on January 26, 1967. At that time, she completed and returned an application for employment. Mrs. Gates heard nothing from Georgia-Pacific thereafter. She did not learn that the accounting positions had been filled until she re-applied on September 14, 1967.

Mrs. Gates brought this action under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–5, alleging racial discrimination in hiring practices. Her initial complaint was filed on October 12, 1967, with the Equal Employment Opportunity Commission.[1] She was notified by letter of December 16, 1968, that her case was closed by the Commission for lack of jurisdiction. On December 20, 1968, appellee contacted the Commission, expressing her dissatisfaction with the decision. On January 14, 1969, the Commission sent appellee a letter indicating that her case could not be reconsidered by the Commission but, in accordance with the notice previously sent to her, she could file a suit in District Court within 30 days. Appellee advised the Commission on January 20, 1969, that she had not received a right-to-sue notice. Appellee then received a letter from the Commission dated January 23, 1969, stating that through error it had not sent her a 30 day notice and it was enclosing a 30 day right-to-sue letter.

Mrs. Gates commenced her action in the United States District Court for the District of Oregon on February 20, 1969. In due course a judgment in her favor was obtained.

Georgia-Pacific appealed to this court from that judgment. Because jurisdictional issues involving the 30 day notice letter has not been resolved at the lower court level, we remanded to the District Court to determine whether the civil action had been timely filed in the District Court. After receiving additional evidence and permitting the 30 day letter

---

* Honorable Morell E. Sharp, District Judge, Western District of Washington, sitting by designation.

1. Appellant had previously filed a charge with the Oregon Bureau of Labor, Civil Rights Division, under the provisions of Oregon Revised Statutes 659.040. The state agency dismissed the charge on the merits.

to be introduced into evidence, the District Court again ruled in favor of appellee. For purposes of this appeal, the appeals from the original judgment and the judgment on remand have been consolidated.

## I

### Jurisdictional Issues

(a) *Authority on Remand*

■ We must first dispose of an issue raised by appellant concerning the scope of our remand. The problem arises because of a bureaucratic mishap. In the first pretrial order, appellant admitted appellee's receipt of the Commission's 30 day notice letter of January 23, 1969. Through clerical error, the first pretrial order was lost and has never been found. Appellant asserted in the amended pretrial order that appellee had not timely filed her action with the Commission and that she had not received the January 23, 1969 letter. This amendment went unnoticed by appellee and the trial judge. Thus, the issue of receipt of the 30 day letter was never expressly raised at trial, and the trial judge never ruled on the matter.

We remanded for a ruling on the jurisdictional issue. Our order provided:

> On appeal, Georgia-Pacific poses a jurisdictional question as to the 30 day letter notice asserted in plaintiff's contentions in the amended pre-trial order and denied in defendant's contentions in the same pre-trial order. The letter does not seem to be in the official record. Further, this court is not satisfied that the issue was squarely presented to the district court.
>
> Therefore, the case is remanded to the district court for that court to rule on the jurisdictional issue here posed.
>
> From any such ruling, a party aggrieved may take a new appeal and on

motion may then consolidate it with the pending appeal.

On remand, the trial judge admitted additional evidence on the issue and permitted the letter to be introduced. He then entered a judgment order in favor of plaintiff appellee. Appellant asserts that neither the remand order nor Federal Rule of Civil Procedure 60(b) permitted the trial judge to re-open the record on remand. We disagree.

Our order was clearly designed to permit the trial judge to rule both on questions of fact and questions of law surrounding the 30-day letter. This quite obviously necessitated re-opening the record. Viewing our remand order as sufficiently broad to sustain the actions of the trial judge, we express no opinion on whether Rule 60(b) provides an independent and adequate basis for reopening the record under the facts of this case.

(b) *Timely filing with Commission*

■ The relevant portion of Section 706(d) of Title VII of the 1964 Civil Rights Act [2] provided that an unlawful employment practice charge "shall be filed by the person aggrieved within two hundred and ten days after the alleged unlawful employment practice occurred." Appellee was interviewed for the position on January 26, 1967, at which time she submitted an application for employment. Further, there is adequate support in the record for the trial judge's finding that the position to which appellee could have been hired was vacant on March 17, 1967, and was filled on March 28, 1967. Appellee filed her complaint with the Commission on October 12, 1967. Appellant contends this was not timely on the ground that the "alleged unlawful employment practice" occurred, if at all, when appellee was interviewed for the position and submitted her application. We reject this argument. The alleged unlawful employment practice is not complete until the position is filled and no longer available to the

---

2. The statute has since been amended. *See* 42 U.S.C. § 2000e–5(e).

claimant. Thus, the complaint was timely because it was filed within the required 210 days after the position had been filled.

### (c) *Timely filing of action in the District Court*

■ Section 706(e) of the Civil Rights Act [3] provided, *inter alia,* that:

> If within thirty days after a charge is filed . . . the Commission has been unable to obtain voluntary compliance with this title, the Commission shall so notify the person aggrieved and a civil action may, within thirty days thereafter, be brought against the respondent named in the charge.
> . . .

Appellee's action was not commenced in the District Court until 66 days after the Commission's letter of December 16, 1968. While this letter informed appellee that the Commission was closing her case for lack of jurisdiction, it did not advise her that she could commence an action in the District Court within 30 days. In neglecting to so advise appellee, the Commission failed to comply with Section 1601.25 of its own regulations.[4] Appellee was finally advised of this right by letter of January 23, 1969, and she promptly commenced her action. The issue presented by the unusual facts of this case is whether the 30 day period within which the civil action may be brought commenced when the January 23, 1969 formal notice was received. We believe that it did.

Preliminarily, we note that Section 706(e), narrowly speaking, was not addressed to "no jurisdiction letters." More significant, however, is the fact that certain equitable principles may operate to toll the 30 day requirement. *See, e. g.,* Stebbins v. Nationwide Mutual Insur. Co., 469 F.2d 268 (4th Cir., 1972), cert. denied, 410 U.S. 939, 93 S. Ct. 1403, 35 L.Ed.2d 606; McQueen v. E. M. C. Plastic Co., 302 F.Supp. 881 (E.D.Tex.1969). We are convinced that,

as a result of the Commission's error, appellee was confused, and, under the circumstances, acted with all of the diligence and promptness which could be expected. We restrict our holding to the facts of this case, and we express no opinion on the form of notice which might trigger the 30 day period under other circumstances.

### II

### *Sufficiency of Evidence*

■■ We now reach the merits of this appeal. On this subject we are guided in large part by the decisions of the Supreme Court in Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), and McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In *Griggs* the Court noted that Title VII requires "[t]he removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification." 401 U.S. at 431, 91 S.Ct. at 853. Lack of discriminatory intent is not a defense, for "Congress directed the thrust of the Act to the *consequences* of employment practices, not simply the motivation." 401 U.S. at 432, 91 S.Ct. at 854 (emphasis in the original). And in *McDonnell Douglas* the Court set forth four criteria which may be used to establish a prima facie case of racial discrimination:

> This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

---

3. The statute now appears in its amended form at 42 U.S.C. § 2000e–5(f)(1).

4. In its amended form, the regulation may now be found at 29 C.F.R. § 1601.25.

411 U.S. at 802, 93 S.Ct. at 1824. The Court was careful to note, however, that the burden then shifts to the employer to show "some legitimate, nondiscriminatory reason for the [employee's] rejection." 411 U.S. at 802, 93 S.Ct. at 1824.

We have no difficulty under the facts of this case in concluding that appellee met her burden and established a prima facie case of racial discrimination. We also find that appellant failed to meet its burden of showing a legitimate non-discriminatory reason for not hiring appellee. The appellant offered as its primary justification for not hiring appellee the existence of a company promotion-from-within policy. This presumably serves two functions: (1) it saves the company time and expense in the training of new employees; and (2) it improves the morale of employees.

While we recognize the potential importance and validity of a promotion-from-within policy, it does not serve as a valid defense to a charge of unlawful hiring practices when applied to the facts of this case. The record clearly supports the finding of the trial judge that the effect of this policy *as applied* was inherently discriminatory.[5] In addition, a question exists concerning the extent to which appellant was committed to a promotion-from-within policy. Only three of the four vacancies were filled in this manner. The fourth was filled by an agency referral. The background of the individual who filled this position was, in the words of the trial judge, "conspicuously unimpressive when compared with that of the (appellee)." We agree with this characterization and also share the skepticism of the trial judge concerning the extent to which the

placement of newspaper advertisements is consistent with strict adherence to a promotion-from-within policy.

The judgment is, therefore, affirmed.

---

5. We quote from his findings:
   Such a policy, if it does not result in unlawful employment practices, does not violate the statute. However, this defendant has few, if any, Negro accountants or accounting clerks at the entry levels. A company policy of recruiting all cost accountants from among accountants and clerks already employed by the company would result in de facto exclusion of Negroes from the better jobs whether the policy is intended to have that result or not.
   When a large company which has no Negro employees in a certain promotion line recruits and promotes primarily within that line, the result can be inherently discriminatory.