Melvin D. GARNER, Plaintiff-Appellant,

v.

E. I. DU PONT DE NEMOURS & COMPANY, Defendant-Appellee.

No. 75-2166.

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1976.

Decided July 16, 1976.

Herbert E. Buhl, III, Columbia, S. C., for appellant.

Charles L. Reischel, Asst. Gen. Counsel, E. E. O. C., Washington, D. C. (Abner W. Sibal, Gen. Counsel, Joseph T. Eddins Jr., Associate Gen. Counsel, and Beatrice Rosenberg, Asst. Gen. Counsel, E. E. O. C., Washington, D. C., on brief), as amicus curiae.

Gardner G. Courson, Atlanta, Ga. (Thompson, Ogletree & Deakins, Homer L. Deakins, Jr., Atlanta, Ga., Jerry H. Brenner, Wilmington, Del., E. I. Du Pont De Nemours & Co., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, CRAVEN, Circuit Judge, and WYZANSKI, Senior District Judge.*

WYZANSKI, Senior District Judge:

Plaintiff, Garner, complains that defendant, E. I. Du Pont De Nemours & Company, discriminated against him on the basis of religion, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The District Court dismissed the complaint because on its face it seemed to the judge not timely filed. The question presented is whether plaintiff to invoke the District Court's jurisdiction must file suit within 90 days of receiving a letter which on its face merely states

"This letter confirms that our efforts have been unsuccessful in the conciliation of the above referenced case. Pursuant to Section 706(f) of Title VII you may request a right to sue, if you so desire."

September 4, 1970 Du Pont discharged its employee Garner. Garner filed with the Equal Employment Opportunity Commission a charge against Du Pont of employment discrimination on account of his religion. May 6, 1974 the EEOC issued a reasonable cause determination. November 21, 1974 the EEOC wrote to Garner the letter which has just been quoted in the indented paragraph above.

On December 3, 1974, plaintiff seems to have requested a "right to sue." The EEOC on January 3, 1975 wrote plaintiff:

"pursuant to Section 706(f)(1) of the Act, you are hereby notified that you may within ninety (90) days after receipt of this letter, institute a civil action in the appropriate Federal District Court."

Plaintiff. filed this action April 2, 1975, which is within 90 days of the January 3, 1975 letter, but more than 90 days after the November 21, 1974 letter. Defendant moved to dismiss the action on the ground that plaintiff had not timely sued. The District Court granted the motion, and dismissed the complaint. Plaintiff appealed to this Court.

The question here presented is whether the condition precedent (or as it is called "limitation") stipulated by Section 706(f)(1) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)–5(f)(1), refers to the earlier, that is, November 21, 1974 letter, or the later, that is, January 3, 1975 letter. The text of the relevant statute provides:

"If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or within 180 days from the filing of such charge . . . the Commission has not filed a civil action . . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . . shall notify the person aggrieved and within 90 days after the giving of such notice, a civil action may be brought."

The statute unambiguously provides that the Commission has a statutory duty to notify the aggrieved party once any one of three events occurs: (1) dismissal of the charge by the Commission, (2) failure of the Commission to file a civil action within 180 days of the filing of the charge, or (3)

* Sitting by designation.

failure of the Commission to enter into a conciliation agreement to which the person aggrieved is a party. At bar we are concerned only with the third of those possible events.

Defendant's contention, which prevailed in the District Court, is that the Commission's November 21, 1974 letter to plaintiff is on its face a notice that "the Commission has not entered into a conciliation agreement to which" plaintiff is a party; and hence was the effective trigger of the 90-day limitation period.

Plaintiff and, as *amicus curiae*, the United States Equal Employment Opportunity Commission argue that the November 21, 1974 letter did not begin the 90-day limitation period because (1) firstly, the express words and the implications of the letter merely indicate that up to now the conciliation efforts have been unsuccessful, without going so far as to notify the aggrieved party that a "conciliation agreement" is, in the Commission's judgment, not going to be "entered into" and (2) secondly, and independently of the first point, the EEOC, by regulations found in 29 CFR 1601.25, has established what disparagingly has been called a two-tier system, under which there is initially a mere letter informing the aggrieved party that conciliation has not succeeded and then there follows a formal notice which constitutes what the regulation entitles "advice concerning his [the aggrieved party's] right to proceed in court under Section 706(e) of Title VII" and what the act itself contemplates in the statutory phrase, "giving of such notice."

We are not deeply impressed by the suggestion that, absent the administrative regulations, we, from a literal reading of the November 21, 1974 letter, should conclude that it obviously falls short of being a notice that starts running the time allowed to begin suit. In other contexts, similar language would seem to imply that there had been a break-down of conciliation efforts and that the writer was giving the recipient notice thereof. But plaintiff's case need not, and does not, rest solely upon how,

standing alone, without any administrative context, the November 21, 1974 letter is to be viewed in connection with Section 706(f)(1) of Title VII.

What we consider significant is that Title VII, at the same time that it provided for a notice from an administrative body, gave that body power to adopt "suitable procedural regulations to carry out the provisions of this subchapter." 42 U.S.C. § 2000e–12(a). Thus Congress authorized the EEOC to prescribe procedural rules which fleshed out the dry bones of the statute.

Nothing could have been more expected than that the administrative agency would exercise its power to prescribe by regulation which form of communication represented such "notice" from the agency as the basic statute contemplated in § 706(f)(1).

By authorized regulations, the EEOC made it plain that the form of notice contemplated by the statute would be given by the Commission in, and only in, the specific shape of a notice expressly informing the aggrieved party of his right to file a suit in the federal courts. Moreover, the EEOC had plausible reasons for adopting this particular procedure—that is to say, first a letter which is not designed to be a notice but just a report of information that conciliation has failed and that the aggrieved person has a right to request a "Notice of Right to Sue," and only afterwards a letter which is the contemplated statutory notice, which the Commission styles a "right to sue" letter inasmuch as it expressly states to the aggrieved party how limited is the time within which he may file his federal court suit. Among the Commission's reasons were that in many cases, after conciliation seemed fruitless, it might be desirable for the appropriate government agency to determine whether it would bring a public suit, before notice was given to a private aggrieved person that he had a right to sue (See *Tuft v. McDonnell Douglas*, 517 F.2d 1301, 1309 (C.A.8, 1975)); or it might be that the aggrieved person still hoped that conciliation might produce results, and did

not want to end the administrative efforts at mediation. If it be said that delay might prejudice the employer because the potential damages would be increasing, it may be answered that perhaps the employer could bring an action to compel the EEOC to issue to the aggrieved party a right-to-sue notice; but we need not, and do not, decide that point.

■ We are aware that, with respect to the question presented to us for adjudication, there is in the lower federal courts a diversity of precedents.

Plaintiff and the EEOC rely upon *Lacy v. Chrysler Corp.*, 533 F.2d 353 (8th Cir. 1976); *Coles v. Penny*, 531 F.2d 609 (D.C.Cir.1976); *Tuft v. McDonnell Douglas Corp., supra.* Cf. *Gates v. Georgia Pacific Corp.*, 492 F.2d 292 (9th Cir. 1974); *Craig v. Eastern Airlines*, 410 F.Supp. 428, 10 FEP Cases 1307 (D.Conn.1975); *Robinson v. Refrigerated Foods, Inc.*, 10 FEP Cases (D.Colo. March 28, 1975). See *Smith v. General Dynamics Corp.*, 10 FEP Cases 1398 (S.D.Cal.1975); *Doman v. SKF Industries*, 399 F.Supp. 716, 11 FEP Cases 359 (E.D.Pa.1975).

Defendants invoke *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 520 F.2d 409 (2nd Cir. 1975); *Cleveland v. Douglas Aircraft Co.*, 509 F.2d 1027 (9th Cir. 1975); *Harris v. Sherwood Medical Ind.*, 533 F.2d 353 (8th Cir. 1976); *Lacy v. Chrysler Corp., supra; Whitfield v. Certain-Teed Prod.*, 533 F.2d 353 (8th Cir. 1976); *Barfield v. A.R.C. Sec., Inc.*, 10 FEP Cases 789 (N.D.Ga.1975); *Kelly v. Southern Prod. Co.*, 10 FEP Cases 1221, No. 19243 (N.D.Ga.1975); *Mungen v. Choctaw, Inc.*, 402 F.Supp. 1349, 10 FEP Cases 1345 (W.D.Tenn.1975); *Pope v. North Hills Passavant Hosp.*, 11 FEP Cases 590 (W.D.Pa.1975); *Kirkwood v. Pidgeon Thomas Iron Co.*, 11 FEP Cases 699 (W.D.Tenn. 1975); *Keeling v. St. Louis-San Francisco Ry.*, 11 FEP Cases 1221, No. 19243 (N.D.Ga. 1975); *Turner v. Texas Instr., Inc.*, 401 F.Supp. 1179, 11 FEP Cases 748 (N.D.Tex. 1975); *McGuire v. Aluminum Co. of Amer.*, 11 FEP Cases 858 (D.S.Ind.1975); *Williams v. Sheraton Corp. of Amer.*, 11 FEP Cases 897 (E.D.La.1975).

Without examining in detail all these cases, we turn to the four which seem to us to be pivotal. The two cases from the Eighth Circuit, *Lacy* and *Tuft* squarely support plaintiff and are indistinguishable. While not squarely in point, *Coles v. Penny, supra*, is, in our view, even more helpful to plaintiff. The Court of Appeals for the District of Columbia held that notice to a federal employee that his charge of employment discrimination had been dismissed and that the agency decision was final did not suffice to start the running of a 30-day period in which a civil action might be brought, when the notice failed to inform the employee of his right under Title VII to file such an action. What Judge McGowan wrote on behalf of Bazelon, C. J., Wright, J., and himself is strikingly applicable to the case at bar, and seems to us persuasive as to what we should decide. The following quotations are appropriate benchmarks for the case at bar: "[Title VII] . . . relies upon laymen, operating without legal assistance, to initiate both administrative complaints and lawsuits . . . and [procedural] technicalities are particularly inappropriate in [such] a statutory scheme . . . Legislation which evinces such concern over the burden imposed upon a working man or woman seeking to enforce Title VII rights requires a practical and reasonable construction of its enforcement provisions." 531 F.2d, p. 614. "Title VII is remedial in character and should be liberally construed to achieve its purposes. [. .] For this reason, 'courts confronted with procedural ambiguities in the statutory framework have, with virtual unanimity resolved them in favor of the complaining party.'" 531 F.2d, p. 615. "That approach reflects not only the manifest importance of Title VII rights to complaining parties, but also the broad national commitment to eliminating such discrimination and the importance of private suits in fulfilling that commitment. [. .] As the statutory language of the notice provision does not clearly compel any particular resolution of the issue before us, we should seek a reading of the statute 'which effectuates rather

than frustrates the major purpose of the legislative draftsmen.'" 531 F.2d, p. 615. "We believe the term 'notice,' . . . requires an interpretation animated by the broad humanitarian and remedial purposes underlying the federal proscription of employment discrimination." 531 F.2d, p. 616. "Such a view might seem to grant administrative agencies an impermissible authority to circumvent congressionally-specified limitation periods. [. . .] But any anomaly is easily avoided if the statute is read by itself to require notice of right to sue, a requirement made more explicit by the administrative agency charged with carrying out the statutory mandate." 531 F.2d, p. 616.

We are not unaware that a different approach is taken in *DeMatteis v. Eastman Kodak Co., supra.* But we are not convinced either by the general attitude expressed in that pair of opinions, nor by what we regard as their doubtful technical accuracy in connection with Title VII proceedings. That case seems to us to misjudge the nature of the conciliation process before the EEOC. While there are occasionally dramatic withdrawals which unmistakably draw a sharp line indicating failure of conciliation efforts, the more characteristic situation in the conciliation process is one where ultimately it appears to the mediator that his intervention is getting nowhere. In the dual-letter system, the first letter is an appropriate way of saying that it looks to the Commission as though conciliation will not work; if the allegedly aggrieved party feels that it is time to break off the mediation and to sue, he may get a right to sue letter by asking for one from the Commission. The dual-letter system is not designed to, and indeed does not, extend the time within which Congress allowed a federal court action to be begun. Unless the aggrieved party demands a notice from the Commission, it may take as long as it likes before dispatching such a letter. See *Tuft v. McDonnell-Douglas Corp., supra.* It is not accurate to say that the dual-letter system in some way increases the power of the EEOC or the aggrieved party to delay the beginning of the 90-day period, and so goes beyond or flouts the authority conferred by Congress.

In conclusion, we hold that, for reasons substantially similar to those given by Judge McGowan in *Coles*, it was within the regulatory power of the EEOC in interpreting § 706(f)(1) of Title VII to treat (as it did when the instant case arose, although its present procedure may be different) only a formal "right to sue" letter from the EEOC as constituting the requisite statutory "notice" which started the permissible period for initiating a federal court case under Title VII. Our conclusion is that plaintiff, when he sued within 90 days of receiving the January 3, 1975 letter from the EEOC, timely acted, and that in adjudging otherwise the District Court erred.

*Reversed.*

ALBERT V. BRYAN, Senior Circuit Judge (dissenting):

With the District Judge and the weight of appreciable decisional authority, I think that Congress, in 42 U.S.C. § 2000e–5(f)(1) —Section 706(f)(1) of Title VII of the Civil Rights Act of 1964—was quite explicit. Only that body may engraft upon it equitable or other elastic relaxations. The District Court was and, now, we are asked to amend what the majority opinion at once concedes is an "unambiguous" provision. Regardless of who is at fault in neglecting to meet the time-deadline, it was not the error of Congress in its phrasing of the Act. I would affirm.