**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-1730**

VICTORIA L. TILLBERY,

                Plaintiff - Appellant,

        v.

KENT ISLAND YACHT CLUB, INC.,

                Defendant - Appellee.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Catherine C. Blake, District Judge.
(1:09-cv-02956-CCB)

Argued: September 20, 2011        Decided:  January 19, 2012

Before WILKINSON, NIEMEYER, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.  Judge Floyd wrote a
dissenting opinion.

Joyce E. Smithey, RIFKIN, LIVINGSTON, LEVITAN & SILVER, LLC,
Annapolis, Maryland, for Appellant.   Craig Forrest Ballew,
FERGUSON, SCHETELICH & BALLEW, PA, Baltimore, Maryland, for
Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After enduring unwanted, sexually-laden harassment by the general manager and a member of the board of the Kent Island Yacht Club, Inc., Victoria Tillbery, a waitress at the Yacht Club, complained to the EEOC on April 22, 2009, by filling out an online questionnaire. In the questionnaire, Tillbery stated that she was hired on July 1, 2006, and that the allegedly improper conduct took place on July 1, 2006. Naming Kevin Damas and Bob Schober as the persons responsible, she described their conduct: "Sexual language used; propositioned for money; display of doll for sexual purposes" and "Money for sex; just wanted sex." When Tillbery filled out the questionnaire, she was represented by an attorney, who later wrote the Kent Island Yacht Club, demanding that the Club cease and desist in its sexual harassment of Tillbery.

Less than two weeks later, Tillbery filled out another EEOC questionnaire, but this time in person in the Baltimore office of the EEOC, giving essentially the same information that she had given on April 22, 2009. In response to this complaint, the EEOC sent the Kent Island Yacht Club a notice of the discrimination claim.

Finally, on June 27, 2009, Tillbery filed a formal charge with the EEOC, which she signed under the penalty of perjury. The charge stated:

2

> On July 1, 2006, I was hired by the above referenced employer as a waitress. On this same date I was subjected to sexual harassment by Kevin Damass [sic] (General Manager) and Bob Shober [sic] (Rear Commodore). Sexual language was used, I was propositioned for money, and there was a display of a doll for sexual purposes.

In response to the charge, the EEOC sent Tillbery a right to sue letter on August 8, 2009, stating, "Your charge was not timely filed with the EEOC; in other words, you waited too long after the date of the alleged discrimination to file your charge."

Tillbery commenced this action under Title VII of the Civil Rights Act of 1964 against the Kent Island Yacht Club on November 6, 2009. In her complaint, she alleged sexual harassment by both Damas and Schober, but she claimed that it took place between October 2008 and April 2009. The complaint also alleged that from May 2009 through October 2009, the Kent Island Yacht Club retaliated against her because of her EEOC complaint.

On Kent Island Yacht Club's motion to dismiss or, in the alternative, for summary judgment, the district court dismissed the complaint for lack of subject matter jurisdiction, concluding that Tillbery had not exhausted her administrative remedies by first filing a charge with the EEOC with respect to the harassment that occurred between October 2008 and April 2009. See Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009) (holding that a plaintiff's "failure . . . to exhaust

3

administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim"). The court pointed out that in her EEOC questionnaires and formal charge, Tillbery described sexual harassment that took place on July 1, 2006, leading the agency to conclude that the charge was untimely. The conduct alleged in the complaint in this case, however, was described as having taken place between October 2008 and April 2009, and a charge about that conduct was never filed with the EEOC for investigation and possible administrative resolution.

Responding to Tillbery's contention that her use, in the EEOC questionnaires, of the July 1, 2006 date was merely a clerical error that had been repeated without correction in the formal charge, the court acknowledged that Tillbery was probably right. But the court observed that the effect of the error was substantive, frustrating the scheme designed by Congress for resolving such claims. As the court stated:

> The requirement that a claimant inform the EEOC of the date(s) of the alleged discriminatory activity is not merely a technicality. Rather, such information notifies the agency of the scope of its investigation, and ultimately, the scope of a plaintiff's right to file a federal law suit is determined by the [EEOC] charge's contents. Moreover, among the reasons Congress enacted Title VII's exhaustion requirement was that the EEOC administrative process is typically better suited to ending discrimination than the ponderous pace of formal litigation, because the EEOC undertakes detailed investigations into potential discrimination claims before any suit is filed, both

4

> preserving judicial economy . . . and helping prospective plaintiffs build their case.

(Internal quotation marks and citations omitted).

In short, Tillbery's charge filed with the EEOC described sexual harassment on July 1, 2006, leading the EEOC to dismiss that charge as untimely. Yet in the complaint filed in this case, she alleged sexual harassment occurring during the period from October 2008 to April 2009, for which she never filed a charge with the EEOC, thereby denying the EEOC the opportunity to investigate and mediate the claim. Because she failed to exhaust her administrative remedies with respect to the 2008-09 conduct, the district court concluded that it was without subject matter jurisdiction.

While the assumed clerical error is regretful, it was compounded by additional conduct. At the time Tillbery filed her complaint with the EEOC, she was represented by counsel. Moreover, she repeated the error in her second filing and again in her formal EEOC charge, where she stated under oath that the sexual harassment occurred on July 1, 2006. Finally, after the EEOC notified Tillbery and her counsel of the untimeliness of her claim, she still did not seek to correct the alleged error in her filings with the EEOC. See 29 C.F.R. § 1601.12 (allowing the correction of "technical defects or omissions" and providing

5

that these corrections will "relate back to the date the charge was first received").

The dissent concludes that the EEOC failed to perform its duty to investigate Tillbery's charge after receiving it and that even a "minimal investigation" in this case would have "exposed the scrivener's error" that Tillbery now claims occurred when she stated that the discrimination occurred in July 2006 rather than October 2008 and April 2009.

While we agree with our good colleague that the EEOC is given the task of investigating discrimination charges, we cannot agree that it needed to conduct more of an investigation than it did in this case. It was given no inkling of reason to question Tillbery's claim that the discrimination occurred in July 2006, and without any reason to doubt the facts as claimed multiple times by Tillbery, even when represented by counsel, we cannot conclude that the EEOC's investigation was not reasonable. From its point of view, the EEOC received a charge of discrimination occurring in July 2006 and reasonably concluded that because the charge for that discrimination was filed more than two years later, it was untimely. The dissent's proposal to have the EEOC conduct a more expansive investigation would in principle require the EEOC to investigate independently even undisputed facts on every charge that it receives. This is

6

clearly not required by law and, moreover, would be completely impractical, bringing the EEOC to its knees.

Having reviewed the record carefully and considered Tillbery's arguments on appeal, we affirm for the reasons given by the district court in its thorough opinion. We do note, however, the possibility of some relief from the ill effects of the alleged clerical error, as Tillbery assures us that she has pending timely state court actions, which allege the same misconduct. We trust that she will pursue those so as to be able to present the merits of her claim for resolution.

<u>AFFIRMED</u>

FLOYD, Circuit Judge, dissenting:

I respectfully dissent.

Victoria L. Tillbery filed suit against Kent Island Yacht Club, Inc. (KIYC), alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17 (Title VII), and Article 49B of the Maryland Code, recodified effective October 1, 2009, as Md. Code Ann. State Gov't §§ 20-101 to 20-1203. Tillbery's claims also included retaliation under Title VII and Article 49B, negligent retention and supervision, and intentional infliction of emotional distress.

KIYC subsequently filed a motion to dismiss or, in the alternative, for summary judgment. The district court dismissed Tillbery's federal claims for lack of subject matter jurisdiction, finding that she had failed to exhaust her administrative remedies. I think that this was in error. Thus, for the reasons set forth below, I would vacate the district court's order and remand for further proceedings.


I.

The underlying facts of this case, as cogently set forth by the distinguished district court, are as follows:

> KIYC is a private yacht club located in Maryland that hosts a marina, a club house, and a restaurant for its patrons. In July 2006, Ms. Tillbery began

8

working at KIYC as a waitress and bartender. Her duties included taking orders and serving food and beverages to patrons at the KIYC restaurant. Ms. Tillbery alleges she became the victim of sexual harassment in the fall of 2008, after KIYC hired Kevin Demas as General Manager in July 2008. As General Manager, Mr. Demas was Ms. Tillbery's direct supervisor, and he is alleged to have sexually harassed Ms. Tillbery on numerous occasions. Ms. Tillbery further alleges that, beginning in November 2008, Bob Schober, KIYC Rear Commodore and Board Member, began harassing her as well. At the time this complaint was filed, Ms. Tillbery continued to work at KIYC. In her motion for leave to amend the complaint, however, Ms. Tillbery alleges that she was constructively discharged on April 23, 2010.

Without going into exhaustive detail here, the facts alleged in Ms. Tillbery's complaint are troubling. Ms. Tillbery alleges that, between October 2008 and April 2009, Mr. Demas sent her over fifty inappropriate text messages, including requests for sexual considerations and descriptions of sexual acts that he wanted to perform on her. Mr. Demas is also alleged to have left similarly inappropriate notes in her paychecks. Ms. Tillbery further alleges that Mr. Demas repeatedly asked her to spend time with him outside of work, and once said "Everyone knows that you don't sleep with your husband" when she declined. In addition, he allegedly made at least twenty sexually inappropriate comments to Ms. Tillbery when she bent over to stock the refrigerator, including such statements as "Man you got the nicest ass. I could grab it right now[,"] and "Oh baby oh baby."

Mr. Demas's harassment of Ms. Tillbery is alleged to have included touching as well. In January 2009 Mr. Demas allegedly approached Ms. Tillbery from behind and began rubbing her shoulders, saying "You deserve to be treated better. Do you know how beautiful you are?" Then he apparently grabbed each side of her face with his hands and attempted to forcibly kiss her, while saying "Just give me a kiss." Later, in the spring of 2009, Mr. Demas allegedly hung up a rag doll with blonde hair wearing a bikini in the kitchen at KIYC. Ms. Tillbery has blonde hair and, along with the doll, Mr. Demas apparently posted a

9

sign that read "Vikalicious[."]  When another employee approached Mr. Demas about the doll, he allegedly responded "It's Vickie" and "I can do what I want."

Moreover, Ms. Tillbery alleges that she was harassed not only by her direct supervisor, Mr. Demas, but also by KIYC Board Member and Rear Commodore, Mr. Schober, beginning in November 2008.  Mr. Schober allegedly offered Ms. Tillbery money if she would have sex with him.  According to Ms. Tillbery, he made this offer two to three times per week.  Ms. Tillbery also alleges that he made other inappropriate comments to her, including "My wife isn't able to satisfy me, and I think you would be the one that could if you know what I mean[,"] and "I know you need the money because I always see you working all the time.  So if I give you $500, would you sleep with me?"  On April 10, 2009, Mr. Schober apparently came to Ms. Tillbery's home, which frightened her because she did not know how he learned where she lived.  Mr. Schober allegedly said that he wanted a haircut, and tried to open the screen door to Ms. Tillbery's home.  Ms. Tillbery asked him to leave, which he eventually did.

Ms. Tillbery claims that she told Mr. Demas of Mr. Schober's advances toward her on at least three occasions, but that there was no informal or formal sexual harassment policy in place at KIYC.  The situation was particularly uncomfortable, she points out, because Mr. Demas was her direct supervisor, and Mr. Schober, as a member of the KIYC Board, was essentially Mr. Demas's supervisor.  Unable to stand the harassment any longer, Ms. Tillbery submitted her resignation in writing on February 18, 2009.  Mr. Demas allegedly promised her that the harassment would stop if she would agree to withdraw her resignation, which she reluctantly did, writing at the bottom of her resignation letter, "after speaking with Kevin, I [am hoping] that this situation will resolve itself. If the situation continues I will go to the labor board as I need this job to support my family."

Eventually, Ms. Tillbery contacted the Equal Employment Opportunity Commission ("EEOC") by filling out an online intake questionnaire on April 22, 2009. A notice of Ms. Tillbery's charge, dated May 7, 2009, was sent to KIYC, and she filled out another questionnaire on May 4, 2009.  Ms. Tillbery signed a

formal EEOC charge under penalty of perjury on June 27, 2009. By this time, Ms. Tillbery had hired an attorney, Cecile Weich, who apparently sent a letter to KIYC requesting that Mr. Demas and Mr. Schober "cease and desist from your sexual harassment of her . . . and requests for sex for money." On April 27, 2009, Ms. Weich sent a follow-up letter to members of KIYC stating that "the General Manager and Rear Commodore S[c]hober . . . have been sexually harassing Victoria Tillbery."

Furthermore, in May 2009, Ms. Tillbery went to the Queen Anne's County Sheriff's Department. As a result of that meeting the Sheriff's Department pursued criminal charges against Mr. Schober. Mr. Schober apparently was later convicted of solicitation for prostitution and sentenced on October 8, 2009, to probation before judgment, supervised until April 8, 2012. He agreed to stay away from Ms. Tillbery, resigned from the KIYC board, and relinquished his membership in the club.

Ms. Tillbery alleges that in May 2009, immediately after she filed charges with the EEOC and the Sheriff's Department, she became the victim of retaliation. Mr. Demas allegedly told her that she could no longer arrive at work at 4:00 p.m. to perform her setup duties, therefore forcing her to perform them during the time that she could have been waiting tables and earning tips. On May 18, 2009, Ms. Tillbery also received a letter from KIYC's attorney complaining of a performance issue. Ms. Tillbery claims the letter was the only negative feedback she ever received during her tenure at KIYC.

According to Ms. Tillbery, her attorney again sent a letter to KIYC on May 19, 2009, this time explaining that Ms. Tillbery was suffering retaliation, and on May 21, 2009, Ms. Tillbery apparently provided a written statement to KIYC summarizing the harassing conduct by Mr. Demas. But Ms. Tillbery alleges the retaliatory conduct did not stop. Instead, she claims that on July 4, 2009, the busiest evening of the year at the KIYC restaurant, Mr. Demas ordered her to train a busser to be a waitress simply so that Ms. Tillbery would have to split her tips for the evening. On July 6, 2009, Ms. Tillbery allegedly complained in writing via her

11

attorney, Ms. Weich, that she was still forced to serve Mr. Schober. She apparently complained of retaliatory treatment again in writing on July 10, 2009, describing how she was forced to train a busser and was prohibited from clocking in until 4:30. On July 24, 2009, counsel for KIYC wrote to Ms. Weich stating, "The Club has implemented safeguards to ensure that Ms. Tillbery is not required to serve Mr. S[c]hober. . . ."

The retaliation is alleged to have escalated, however, on October 12, 2009, when Ms. Tillbery was called into a meeting with Mr. Demas and Jack Caddy, a KIYC Board Member. Mr. Caddy told Ms. Tillbery that KIYC had received some complaints about her, although he provided no information as to the nature of the complaints, who made them, or when they were made. Ms. Tillbery alleges that soon thereafter, on October 21, 2009, she received a letter from KIYC stating that "employees may not clock in more than seven (7) minutes before their shift is scheduled to start[,"] and that "it has been recorded that on Thursday, Oct. 15, 2009, you clocked in fourteen (14) minutes before your shift was scheduled to start and on Friday, Oct. 16, 2009, you clocked in twenty-five (25) minutes before your scheduled start time; both without consulting management." Ms. Tillbery alleges that other employees who had engaged in similar conduct did not receive a warning about the new policy and continued to clock in early.

Ms. Tillbery also alleges that Mr. Demas continues to retaliate against her by refusing to speak to her and constantly watching her. He allegedly instructed another bartender to watch Ms. Tillbery and document everything that she does. She claims that other employees have observed his unfair treatment of her and that, as a result of the harassment she has experienced at KIYC, she has suffered a loss of income, extreme and emotional distress, and mental anxiety.

On August 6, 2009, the EEOC notified Ms. Tillbery that it had dismissed her charge of discrimination as untimely and that she had a right to sue. On November 6, 2009, Ms. Tillbery filed the present action against KIYC alleging sexual harassment in violation of Title VII and Article 49B (Counts I & II), negligent

12

retention and supervision (Count III), intentional infliction of emotional distress (Count IV), and retaliation in violation of Title VII and Article 49B (Counts V & VI).

Tillbery v. Kent Island Yacht Club, Inc., Civ. No. CCB-09-2956, 2010 WL 2292499, at *1-4 (D. Md. June 4, 2010) (footnotes omitted) (citations omitted).

On two EEOC questionnaires Tillbery completed, she stated that the alleged sexual harassment occurred on July 1, 2006. An EEOC representative drafted the EEOC charge and also listed the harassment as occurring on July 1, 2006. Both Tillbery and the EEOC representative wrote on the forms that KIYC hired Tillbery on that same date, July 1, 2006. Subsequently, as noted above, on August 6, 2009, the EEOC closed its file on Tillbery's charge without conducting any investigation, informing her that her "charge was not timely filed with the EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge." In her complaint, Tillbery has clearly alleged that, in fact, July 1, 2006, was the date of her hiring, but that the sexual harassment occurred from October 2008 to April 2009.

Upon motion by KIYC, the district court dismissed Tillbery's federal claims for lack of subject matter jurisdiction, finding that "[t]he allegations in Ms. Tillbery's

13

present complaint . . . exceed the scope of her administrative charge and have not been properly exhausted." Id. at *6.

## II.

Before filing suit pursuant to Title VII, the plaintiff must file a charge of discrimination with the EEOC. Jones v. Calvert Grp., 551 F.3d 297, 300 (4th Cir. 2009). The charge must be "'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.' The scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents." Id. (citation omitted) (quoting Chacko v. Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005)). "Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, . . . the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer . . . within ten days, and shall make an investigation thereof." 42 U.S.C. § 2000e-5(b). The only claims that the plaintiff may bring in a subsequent complaint are "those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint." Jones, 551 F.3d at 300 (quoting Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996))

14

(internal quotation marks omitted). Claims raised in the district court but not with the EEOC are barred unless they "would naturally have arisen from an investigation" of the administrative complaint. Dennis v. Cnty. of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995).

"[E]xperience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980). We cannot, however, visit the effects of the EEOC's failure to carry out its statutory duty to perform a reasonable investigation on the plaintiff. Zambuto v. Am. Tel. & Tel. Co., 544 F.2d 1333, 1336 (5th Cir. 1977). Furthermore, we must resolve any ambiguity as to whether a plaintiff satisfied a procedural requirement in the plaintiff's favor to effectuate the purposes of Title VII.

> Title VII is remedial in character and should be liberally construed to achieve its purposes. . . . For this reason, courts confronted with procedural ambiguities in the statutory framework have, with virtual unanimity resolved them in favor of the complaining party. That approach reflects not only the manifest importance of Title VII rights to complaining parties, but also the broad national commitment to eliminating such discrimination and the importance of private suits in fulfilling that commitment.

Garner v. E. I. Du Pont De Nemours & Co., 538 F.2d 611, 614 (4th Cir. 1976) (citation omitted) (quoting Coles v. Penny, 531 F.2d 609, 615 (D.C. Cir. 1976)) (internal quotation marks omitted).

15

III.

KIYC contends that the district court was correct in holding that Tillbery neglected to file a charge with the EEOC with respect to the alleged sexual harassment that occurred between October 2008 and April 2009. Thus, according to KIYC and the district court, Tillbery failed to exhaust her administrative remedies prior to filing suit against KIYC. I disagree.

According to the district court, the allegations contained in Tillbery's complaint "were outside the scope of her EEOC charge due to an apparent error in the dates listed on the charge." Tillbery, 2010 WL 2292499, at *4 n.4. But, from my careful review of the record, I am of the opinion that the allegations in Tillbery's complaint were not outside the scope of her EEOC charge. That is so because both Tillbery's complaint and her EEOC charge concerned the alleged October 2008 to April 2009 harassment, even though, as the district court observed, the date is incorrect on her EEOC charge. In fact, later in its opinion, the district court recognized as much when it wrote the following:

> Ms. Tillbery argues that the July 1, 2006 date in the EEOC charge was merely a clerical error by the EEOC representative who drafted the form, and that all of the facts alleged in her judicial complaint occurred within 300 days of June 27, 2009 [the date Tillbery filed her EEOC charge]. Assuming the truth of the facts alleged in the complaint, it appears likely that

16

> Ms. Tillbery's EEOC charge did contain the wrong date, as Mr. Demas was not even hired by KIYC until July 2008.

Id. at *5.  Thus, drawing all inferences in favor of Tillbery at this stage of litigation, as we are required to do, I credit her explanation of the date as a scrivener's error in her EEOC documents.  See Risk v. Ford Motor Co., 48 F. Supp. 2d 1135, 1146 (S.D. Ind. 1999) (dismissing claims on other grounds, but stating that it was "inclined to credit [the plaintiff's] explanation of the inaccuracy in her EEOC charge, especially when drawing inferences in her favor at this stage of the litigation").  Consequently, I would allow the case to go forward.

Inasmuch as everyone agrees that the EEOC charge contained a scrivener's error in regards to the date that the sexual harassment occurred, and, as the D.C. Circuit has observed, the "filing period begins on the date 'the alleged unlawful practice occurred'—not the date listed in the charge itself," Carter v. Wash. Metro. Area Transit Auth., 503 F.3d 143, 145 (D.C. Cir. 2007) (quoting 42 U.S.C. § 2000e-5(e)(1)), I cannot concur that it was proper in this instance for the EEOC to reject Tillbery's charge without first hearing from the parties.  See 42 U.S.C. § 2000e-5(b) (stating that the EEOC "shall make an investigation" of claims of discrimination).  What seemed evident to the EEOC from the documents before it—that Tillbery's charge was

17

untimely—was an error instead, an error that a reasonable investigation would have revealed, and an error that is now being repeatedly compounded. I respectfully suggest that it is within our province finally to correct it.

It is beyond dispute that,

> among the reasons Congress enacted Title VII's exhaustion requirement was that the EEOC administrative process is typically better suited to ending discrimination than the "ponderous pace of formal litigation[,"] because the EEOC "undertakes detailed investigations into potential discrimination claims before any suit is filed, both preserving judicial economy . . . and helping prospective plaintiffs build their case."

Tillbery, 2010 WL 2292499, at *6 (omission in original) (quoting Chacko, 429 F.3d at 510). But, it is also beyond dispute, as I have already noted, that there is a "broad national commitment to eliminating such discrimination and the importance of private suits in fulfilling that commitment." Garner, 538 F.2d at 614 (quoting Coles, 531 F.2d at 615) (internal quotation marks omitted). In this instance, KIYC asks us to allow procedural formalism to trump this commitment. To this proposition I will not lend my assent.

As observed above, the law requires that the EEOC "shall make an investigation" of all charges. 42 U.S.C. § 2000e-5(b). It also requires claimants to be specific in their charges so that the EEOC can properly investigate and, hopefully, resolve the matter. See Jones, 551 F.3d at 300. When no investigation

18

occurs, however, I think that it is improper for us to bar a plaintiff from her day in court. But, that is what happened here.

Even a minimal investigation into Tillbery's charge would have exposed the scrivener's error and revealed that the complained of sexual harassment occurred between October 2008 and April 2009. Yet the error passed unnoticed because of the EEOC's failure to conduct any investigation. Accordingly, I am unable to agree that we should require Tillbery to suffer from the negative consequences of the law—being unable to assert any claims in federal court except those that the EEOC investigated— even though the EEOC failed to conduct any investigation.

Although we ought not endeavor to instruct the EEOC on how to perform its duties, we also ought not be bound by its decisions when it does not. On the whole, the problems that KIYC complains of are not so much deficiencies in the charge as they are the EEOC's failure to carry out its duties as required by Title VII. See Edelman v. Lynchburg Coll., 300 F.3d 400, 404 (4th Cir. 2002).

Here, Tillbery was unquestionably harmed by the EEOC not performing the simplest of investigations. "Once a valid charge has been filed, a simple failure by the EEOC to fulfill its statutory duties regarding the charge does not preclude a plaintiff's Title VII claim." Id. Thus, I disagree with KIYC

19

that we should, in effect, "visit the effects of the EEOC's erroneous practice on [Tillbery]." Zambuto, 544 F.2d at 1336.

IV.

As an alternative basis for finding that the conduct Tillbery alleged in her complaint did not exceed the scope of her EEOC charge, that her charge was timely, and that she has properly exhausted her administrative remedies, I would look to her April 22, 2009, EEOC questionnaire. There can be no dispute that the April 22, 2009, questionnaire, as well as Tillbery's other EEOC forms, stated that Demas was one of the alleged harassers. Moreover, there appears to be no disagreement that both parties were aware that he began working at the restaurant, at the earliest, on July 1, 2008. Less than 300 days later, on April 22, 2009, Tillbery completed her first EEOC questionnaire. Thus, even if the alleged sexual harassment began as early as July 1, 2008, the date that Demas began working at KIYC, and allowing the EEOC intake questionnaire to serve as a charge for purposes of the exhaustion requirement, I am of the opinion that the spirit of Title VII is better served by holding that the timeliness requirement was met as to Tillbery's Title VII claims. See Carter, 503 F.3d at 146 (allowing an EEOC questionnaire with an incorrect date to constitute a timely charge of discrimination); Edelman, 300 F.3d. at 405 (allowing a

20

letter to the EEOC to serve as a valid charge, without objection, although the plaintiff was represented by counsel during the relevant time period); Waiters v. Robert Bosch Corp., 683 F.2d 89, 91 (4th Cir. 1982) (allowing an affidavit to serve as an EEOC charge although the plaintiff was represented by counsel during the relevant time period).

V.

Even if I assumed that Tillbery failed to exhaust her administrative remedies on the basis of an incorrect date on her EEOC forms, in light of the fact that Title VII is a remedial statute to be liberally construed in favor of the victims of discrimination, I would grant Tillbery an opportunity to amend her EEOC charge. As the majority mentioned,

> [a] charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.

29 C.F.R. § 1601.12(b). Neither the plain language of this regulation nor Supreme Court precedent limit the time frame during which a plaintiff can amend a charge. See Edelman v. Lynchburg Coll., 535 U.S. 106, 116-17 (2002) (finding that allowing the verification of a charge after the expiration of

21

the time for filing has expired was consistent with the plain language of the statute). We need not impose such a limitation either. For that reason, even if I agreed with KIYC that Tillbery failed to exhaust her administrative remedies based on the erroneous date on her EEOC charge, I would, at a minimum, remand the matter to the district court to stay the proceedings so Tillbery could request from the EEOC an opportunity to amend her charge.

VI.

Finally, KIYC makes much of the fact that Tillbery was represented by counsel and, thus, that she should be held to a higher standard in regards to making certain that the date on her charge was correct. As the argument goes, I assume, it is Tillbery's attorney who is really to blame for Tillbery's present predicament. I am unpersuaded.

First, and most importantly, it is of no moment whether Tillbery was represented by counsel. The fact remains that the EEOC should have conducted an investigation before it dismissed her charge. That is a substantial reason for her present predicament.

Second, to agree with KIYC and dismiss this matter based on the action or inaction of Tillbery's counsel is like aiming at the attorney, but shooting the client instead. It is also

22

counter to the law of this circuit as to Title VII claims. Garner, 538 F.2d at 614 ("Title VII is remedial in character and should be liberally construed to achieve its purposes." (quoting Coles, 531 F.2d at 615) (internal quotation marks omitted)).

The fact that Tillbery was represented by counsel changes neither the remedial nature nor the purpose of the statute, which is to stamp out the insidious practice of discrimination. See Garner, 538 F.2d at 614. It is this purpose, not a desire to penalize counsel, that must guide our interpretation of this statute.

VII.

Upon this record, I am unconvinced that Tillbery failed to exhaust her administrative remedies on the basis of the erroneous date on her EEOC documents. But, if she did, I would give her an opportunity to amend her complaint pursuant to 29 C.F.R. § 1601.12(b). Accordingly, I must respectfully dissent.